Case: 22-1550    Document: 17    Filed: 07/07/2022    Pages: 62

**No. 22-1550**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

**Z.H.,**

**Plaintiff-Appellant,**

**v.**

**JAIME GARCIA, ET AL.,**

**Respondents-Appellees.**

**REVIEWING COURT CASE:  3:21-CV-00101
JUDGE DEJULIO**

---

**APPELLANT'S BRIEF AND SHORT APPENDIX**

---

/S/***Christopher Cooper, Esq.***
Law Office of Christopher Cooper, Inc.
105 W. Madison Street, Ste. 1350
Chicago, IL 60602
Tel: 312 473 2968 [or] 219 228 4396
cooperlaw3234@gmail.com
*Attorney for the Plaintiff-Appellant*

*ORAL ARGUMENT REQUESTED*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-1550

Short Caption: Z.H. v Jamie Garcia, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Z.H.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

LAW OFFICE OF CHRISTOPHER COOPER, INC. (for the appeal);   LAW OFFICE OF BEN MURPHY (in the DC Ct)

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        NONE

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        NONE

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s\CHRISTOPHER COOPER, INC.    Date: 7-7-2022

Attorney's Printed Name: CHRISTOPHER COOPER

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑  No ☐

Address: 426 N. BROAD STREET, GRIFFITH, INDIANA 46319 or 105 W. Madison St., STE 1350, Chicago, IL 60602

Phone Number: 2192284396 OR 312473 968    Fax Number: 8663347458

E-Mail Address: cooperlaw3234@gmail.com

rev. 12/19 AK

# TABLE OF CONTENTS

*Section*                                                                                      *Page*

I. Jurisdictional Statement...............................................................  1

II. Statement of the Issues..............................................................  1

III. Statement of the Case...............................................................  2

IV. Summary of Argument...............................................................  4

V. Argument..................................................................................  7

    I.       Standard of Review...............................................................  7

    II.     Shocks the Conscience, Substantive Due Process & Female's Bodily
           Integrity…………………...……………………………………  7

    III.    The Shock the Conscience History……………………………...  12

    IV.    Qualified Immunity……………………………………………..  19

    V.     Equal Protection Claim…………………………………………  20

    VI.    Claims Against Chief Doughty………………………………….  22

          a.   Doughty's Personal Involvement…………………………..,  23

          b.   Defendant Doughty's Claim that Garcia's Conduct does not Shock
             the Conscience……………………………………………  25

VI. Conclusion...............................................................................  25

Certificate Of Compliance, Certificate of Service.............................  26

Short Appendix                                                                              27

    1. Opinion and Order                                                                  A

    2. Complaint                                                                               B

    3. Notice of Appeal                                                                      C

    4. Appearance                                                                             D

i

## TABLE OF AUTHORITIES

*Authority*                                                              *Page*

28 U.S.C. § 1291.............................................................................  1

28 U.S.C. § 1331.............................................................................  1

42 U.S.C. § 1983.............................................................................  1, 2

Federal Rule of Civil Procedure 12(b)(6) .............................................  3

Arnett v. Webster, 658 F.3d 742, 751 (7th Cir. 2011) ........................  23

Ascolese v. Southeastern Pennsylvania Transp. Authority, 902 F.
Supp. 533, 547 (E.D. Pa. 1995)..........................................................  22

Ashcroft v. Iqbal, 556 US 662; 129 S.Ct. 1937, 1949 (2009)..............  21

Before Anita Hill: History of Sexual Harassment in the U.S. | Time....  10

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)..................  21

Berry v. Chicago Transit Authority, 618 F. 3d 688, passim (7th Cir
2010)...............................................................................................  17

Bohen v. City of East Chicago, Ind., 799 F. 2d 1180, 1187  (7th Cir
1986)...............................................................................................  22

Brian K. Payne Ph.D., Melvina Sumter Ph.D. & Ivan Sun Ph.D.
(2003) Bringing the field into the criminal justice classroom: Field
trips, ride-alongs, and guest speakers, Journal of Criminal Justice
Education, 14:2, 327-344, DOI: 10.1080/10511250300085821)........  2

Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir, 2001).............  23

County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).................  15

Del Marcelle decision in D.B. ex. rel. Curtis B. Kopp, 725 F. 3d 681
Court of Appeals (7th Cir 2013).........................................................  22

Farmer v. Brennan, 511 U.S. 825, 834 (1994)..................................  23

Fontana v. Haskin, 262 F. 3d 871 (9th Cir. 2001)............................  13

Foman v. Davis, 371 U.S. 178, 182 (1962)..........................................  5, 21

Geinosky v. City of Chi., 675 F.3d 743, 747 (7th Cir. 2012)...............  20

Hammond Police Officer Jaime Garcia Resigns Under Scrutiny;
Sources Say Incident In Question Involves A Woman – CBS Chicago
(cbslocal.com) and see Female students accuse former Hammond
cop of sexual misconduct during ride-alongs, records show | Crime
and Courts | nwitimes.com...............................................................  25

Hanson v. Le Van, 967 F .3d 584, 592 (7th Cir. 2020).......................  7, 19

Hively v. Ivy Tech Community College of Indiana, 853 F. 3d 339 (7th
Cir. 2017)............................................................................................  17

Kane v. Barger 902 F .3d 185, 188 (3d Cir.2018)..............................  12

LaBella Winnetka, Inc. v. Village of Winnetka, 628 F.3d 937, 942
(7th Cir. 2010)....................................................................................  5, 20

Loving v. Virginia, 368 U.S. 1 (1967)................................................  18

McPhaul v. Board o/Com'rs of Madison County, 226 F.3d 558,564
(7th Cir. 2000)....................................................................................  22

N-Word Reckonings in History and Literature | Pierre Tristam
(flaglerlive.com)..................................................................................  8

Oncale v. Sundowner Offshore Services, Inc., 523 US 75 (1998).........  16

Pace v Alabama, 106 U.S. 583 (1883)................................................  18

Perez v. Fajardo, #01-1143, 257 F. Supp. 2d 467 (D. Puerto Rico
2003).....................................................................................................  24

Plessy v. Ferguson, 163 US 537 (1896)...............................................  15

Rochin v. California, 342 US 165 (1952).............................................  4, 7

Rock River Health Care, LLC v. Eagleson, 14 F.4th 768, 772 (7th Cir.
2021).....................................................................................................  7

Romero v. City of Clanton, #02-A-631, 220 F. Supp. 2d 1313 (M.D.
Ala. 2002).............................................................................................  24

Thompson v. Thompson, 218 US 611 (1910)......................................  13

Timothy Maher's Cops on the Make: Police Officers Using Their Job, Power, and Authority to Pursue Their Personal Sexual Interests, 7 JIJIS 32 (2007).................................................................. 4, 11

Sherwin Manor Nursing Ctr., Inc. v. McAulijfe, 37 F.3d 1216, 1220 (7th Cir. 1994).............................................................. 20

Sims v. Mulcahy, 902 F.2d 524,538 (7'h Cir. 1990).......................... 22

Swanson v. CITIBANK, NA, 614 F. 3d 400 (7th Cir. 2010)................. 6, 21

Szany v. Garcia, et al., 17cv00074.................................................... 6

U.S. DOJ, Ride Along Program: Educating the Public | Office of Justice Programs (ojp.gov) at https://www.ojp.gov/ncjrs/virtual-library/abstracts/ride-along-program-educating-public..................... 2

United States v. Christian, 342 F.3d 744, 751 (7th Cir. 2003)............ 3

NOW COMES Plaintiff Z.H., by counsel, Christopher Cooper and states as follows:

## JURISDICTIONAL STATEMENT

(1)     **Jurisdiction of the District Court**. The District Court had subject matter jurisdiction of this action under 28 U.S.C. § 1331, because the complaint raises questions arising under laws of the United States.

(2)     **Jurisdiction of the Court of Appeals.** The Court of Appeals has jurisdiction under 28 U.S.C. § 1291, as this is an appeal from a district court FINAL order of March 21, 2022 (Dkt 23) and judgment (Dkt 24 on March 23, 2022) granting Defendants' respective motions to dismiss. The indicia showing jurisdiction: Plaintiff's action in the district court was pursuant to 42 U.S. Code § 1983 and that a  § 1983 action forms a basis of jurisdiction by way of a federal question. Plaintiff timely filed a Notice of Appeal within thirty days of March 21, 2022 (see Dkt. 27 filed April 5, 2022).

## STATEMENT OF THE ISSUES

(1)     Whether the conduct of Officer Garcia [as] complained of by the Plaintiff, shocks the conscience to satisfy the 42 U.S. Code § 1983 threshold for deprivation of rights.

(2)     Whether or not Plaintiff pled facts that, if true, show that Officer Garcia's conduct shocked the conscience as that term is understood in the context of the Fourteenth Amendment.

(3)     Whether or not Plaintiff's substantive due process claim presents facts egregious enough to warrant a finding of a constitutional violation of bodily integrity.

(4)     Whether or not Officer Garcia is entitled to qualified immunity.

(5)     Whether or not Plaintiff sufficiently pled a failure to supervise and train claim against the police chief.

(6)     Whether or not Plaintiff sufficiently pled an Equal Protection Claim.

(7)      Whether the Court was in error to dismiss all claims and counts without prejudice.

## STATEMENT OF THE CASE

As a starting point, Plaintiff prosecutes pursuant to 42 U.S. Code § 1983.

Plaintiff was a 17-year-old high school student, when, pursuant to a class project (Compl at 9), she participated on a police ride-along with Defendant-police officer Jamie Garcia (a male) of the Hammond, Indiana Police Department.[1] (Id.)  On the ride-along, Officer Garcia and the Plaintiff were the only two people in the police car.  (Compl at 15).  Garcia was entrusted with the high school student's care and safety and that the ride-along had the purpose of educating the public, including the student, as to police work.

(Cf. U.S. DOJ, Ride Along Program: Educating the Public | Office of Justice Programs (ojp.gov) at https://www.ojp.gov/ncjrs/virtual-library/abstracts/ride-along-program-educating-public; also, Brian K. Payne Ph.D., Melvina Sumter Ph.D. & Ivan Sun Ph.D. (2003) *Bringing the field into the criminal justice classroom: Field trips, ride-alongs, and guest speakers, Journal of Criminal Justice Education*, 14:2, 327-344, DOI: 10.1080/10511250300085821).

In the police car, Garcia, while on duty, in uniform, did sexually molest and assault the minor (Defendant Z.H.) (Compl at ¶¶16,19,20) by touching her; by verbal conduct; and by confining her to include causing her to believe that she would be forced to have sex with another officer (Id. & ¶¶24-25).

Plaintiff filed a 2-count complaint in the US District Court for Northern Indiana (Dkt 1), naming Garcia and Hammond's then police chief, William Doughty, as defendants. Plaintiff avers pursuant to 42 USC 1983, that several of her Constitutional

---

[1] The Ancilla College connection is that there was an arrangement with the college whereby high school students could earn college credits.

rights (14th Amendment) were offended. In this jest, Plaintiff Z.H. sued Officer Jamie

Garcia and Chief John Doughty in their individual capacities under 42 U.S.C. § 1983.

Z.H. alleges that Defendants, on duty, and acting in the furtherance of police business at

all times relevant, acted under color of law (see *United States v. Christian,* 342 F.3d 744, 751

(7th Cir. 2003) defining under color of law). Z.H. alleges that Officer Garcia violated her

Fourteenth Amendment substantive due process right and the Equal Protection Clause during a

ride-along by subjecting her to unwanted touching, insinuating comments, and otherwise

degrading behavior.[2] Z.H. further avers that Defendant-Chief Doughty is liable for Officer

Garcia's conduct because he failed to train or supervise him.

Officer Garcia moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) and for

judgment on the pleadings under Rule l2(c). (DE 17). He argued that Z.H. did not plead facts

rising to a constitutional violation and that, even if she had, he is entitled to qualified immunity.

*(Id.* at 1). Chief Doughty also moved to dismiss for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6).2. (DE 9). Plaintiff's responses are found at Dkts.13 and 21

respectively. Defendants filed reply briefs at Dkts.14 and 22 respectively. The court granted

both motions at Dkt 23, the opinion and order. Thereafter, within 30 days of Dkt. 23, the

Plaintiff filed a notice of appeal.

---

[2] A violation of substantive due process occurs when the alleged conduct "shocks the
conscience." *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 846---47 (1998). "The Supreme Court
has noted that this standard lacks precise measurement, but has stated that the emphasis on
whether conduct shocks the conscience points toward the tort law's spectrum of liability.

Conduct falling toward the more culpable end of the spectrum shall be found to shock the
conscience." *King ex rel. King v. E St. Louis Sch. Dist. 189,496* F.3d 812, 819 (7th Cir. 2007)
(citations and quotation marks omitted). It is clearly established that the liberty protected by the
Fourteenth Amendment substantive due process right "includes bodily integrity" and is infringed
by a serious, as distinct from a nominal or trivial, battery. *Alexander,* 329 F.3d at 916.

## SUMMARY OF ARGUMENT

In analyzing the Z.H. matter, in the furtherance of addressing substantive due process, a woman's bodily integrity, and ultimately concluding what shocks the conscience, the 7th Circuit is called upon to accept the literal import and meaning of the germane verbiage in the *Rochin v. California,* 342 US 165 (1952), namely: "…*those canons of decency and fairness which express the notions of justice of English-speaking peoples*" coupled with Z.H.'s, request for a similar texualist approach to applying the Rochin court's incorporation of Justice Cardozo's pronouncement of a reasonable gauge, namely: *those values and norms "so rooted in the traditions and conscience of our people as to be ranked as fundamental.*" (Rochin at 169).

What makes Z.H.'s traumatic experience the most shocking is when Garcia drove Z.H. to a secluded location and met another officer there. *(Compl* 22-23). This writer emphasizes that it was a secluded location. Two men in police uniforms present and one female, the plaintiff, a petite female. Officer Garcia, a very muscular man, in Z.H.'s presence, asked the other male officer if he wanted to have sex with Z.H --and Garcia did not stop there, rather, repeated the question more than once. No laughing no humor, rather, --in a secluded area, Garcia, as an authority figure with government conferred power to use force and to cause compliance sought for the occurrence of intercourse repeatedly. Z.H. was well aware the enormous held by the two officers as she cowered. The power had by police officers and its impact on citizens is well documented in peer reviewed scientific research. See by example, Timothy Maher's *Cops on the Make: Police Officers Using Their Job, Power, and Authority to Pursue Their Personal Sexual Interests,* 7 JIJIS 32 (2007)). And, Garcia deputized by government, and imbued and emboldened with the power of "government," offers the 17-year-old for sexual intercourse [for Garcia's sexual gratification]. *(Compl* 24-25.). Z.H. was both terrified and offended by Officer

Garcia's conduct. *(Id.* 24). Most important, Garcia's action in the secluded area, was for personal gratification, not for a law enforcement purpose. This part of the 14th Amendment deprivation of rights saga --especially-- makes Z.H.'s experience a viable 14th Amendment violation --as much as her ordeal is distinguishable from the cases cited by the District Court as not meeting the shock of conscience standard and for which the court asserted Z.H.'s facts were no different.

What shocks the conscience is relative to time and place, and societal norms among other phenomena. Clearly the United States and its people have evolved.

Z.H. alleges that Officer Garcia violated the Equal Protection Clause and treated her differently because she is female. (Compl at 35; DE 21 at 11).
The district court held that Z.H.'s lack of presentation of a comparator was disadvantageous. At the motion to dismiss stage, Plaintiff Z.H. has no duty or obligation to present a similarly situated person and or comparator. (See *LaBella Winnetka, Inc. v.Village of Winnetka,* 628 F.3d 937, 942 (7th Cir. 2010)). In satisfaction FRCP 8 and *Bell v Twombly*, infra., the Complaint avers that female ride-along passengers were treated differently, and that Officer Garcia acted intentionally to discriminate against her. (Compl at 35-36). The totality of the Complaint is that Garcia engaged in intentional torts as opposed to negligence. Moreover, the Complaint makes clears at various points that all previous paragraphs are incorporated herein. (E.g., at ¶40). The equal protection claim incorporates the "facts section" of the Complaint.

The District Court's position that the Complaint needed to state that Officer Garcia gave ride-alongs to males is in error. At a minimum, the court should have been dismissed the claim without prejudice. It was an abuse of discretion for the court to disallow Z.H. to cure what the court deemed as pleading deficiencies. Five factors, first enunciated in *Foman v. Davis*, 371 U.S.

178, 182 (1962), govern. All five factors cut in Z.H.s favor. Moreover, the court implied that had it had more information, it may have decided in the alternative.

Furthermore, Z.H. argues that *Swanson v. CITIBANK, NA*, 614 F. 3d 400 (7th Cir. 2010) supports her position that she sufficiently pled and that the District Court's bar (in her case) was simply, and unnecessarily too high. (*Cf. Swanson* at 403-405).

Like, with the equal protection claim, where the Plaintiff argues the dismissal should not have been with prejudice, so too does she make the same argument as to the dismissal of claims against Chief Doughty.

Defendant Garcia was sued in 2017 by fellow police officer Denise Szany. She alleged that Garcia, while on duty, sexually assaulted her.  (See *Szany v. Garcia, et al*., 17cv00074, in the Northern District of Indiana).  Chief Doughty was the chief at the time of the sexual assault and the suit. Furthermore, in January 2018, he was deposed in the Szany matter. With such extensive knowledge of Garcia's tendency to commit sexual assaults against women, Doughty failed to issue an order prohibiting Officer Garcia from having female  ride-alongs. At the time Mr. Doughty failed to issue such an order, he was acting under the color of law.

 Officer Garcia is not entitled to immunity. It is without a doubt that the acts complained of by Z.H. constitute a violation of a constitutional right held by Z.H., supra. While entrusted to the care of a police officer, Z.H. was physically abused by the police officer, acting under color of law, to include that the "minor" victim was taken to secluded area, offered to another officer for the purpose of sexual intercourse (understandably causing trauma to Z.H.; as well, the "mind" of a reasonable female teenager in that terrifying government created situation would race [sic] and wonder if she is going to be raped based on the conduct of the state actor on behalf of the government) represents a constitutional violation.

It goes without saying that the rights (plural) of Z.H. were 'clearly established' at the time of the alleged violation, such that a reasonable public official, namely Garcia, would have known his conduct was unlawful. Likewise, Chief Doughty is not entitled to qualified immunity. Z.H. complained to the Hammond Police leadership *(Id* at 31). Chief Doughty was the police chief of the Hammond Police Department at the time of Z.H.'s ride-along. *(Id* at 6.) Chief Doughty knew that Officer Garcia was being sued for sexual misconduct at the time of the ride-along. *(Id.* at 32- 33). A reasonable seasoned police chief would have realized that Z.H.s 'clearly established' rights at the time of the alleged violation, and that such reasonable public official would have

known Garcia's conduct was unlawful. (See *Hanson v. Le Van,* 967 F .3d 584, 592 (7th Cir. 2020).

## ARGUMENT

### I.    Standard of Review

The Court reviews de novo a district court's order granting a Rule 12(b)(6)

motion to dismiss. *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 772 (7th Cir. 2021).

### II.    Shocks the Conscience, Substantive Due Process<br>& Female's Bodily Integrity

Justice Frankfurter, writing for the Court in *Rochin v. California,* 342 US 165 (1952), makes clear that some conduct by state agents, although not specifically prohibited by explicit language in the Constitution, "shocks the conscience" in that it offends "those canons of decency and fairness which express the notions of justice of English-speaking peoples." (Id. at 169). The majority opinion continued [quotations omitted]

> Due process of law is a summarized constitutional guarantee of respect for those personal immunities which, as Mr. Justice Cardozo twice wrote for the Court, are "so rooted in the traditions and conscience of our people as to be ranked as

fundamental," _Snyder_ v. _Massachusetts,_ 291 U. S. 97, 105, or are "implicit in the concept of ordered liberty." _Palko_ v. _Connecticut,_ 302 U. S. 319, 325.[2]
(Rochin at 169)

In analyzing the  Z.H. matter, in the furtherance of addressing substantive due process, a woman's bodily integrity, and ultimately concluding what shocks the conscience, the 7th Circuit is called upon to accept the literal import and meaning of the germane verbiage in the Rochin decision, namely: "…_those canons of decency and fairness which express the notions of justice of English-speaking peoples_" coupled with Z.H.'s, request for a similar texualist approach to applying the Rochin court's incorporation of Justice Cardozo's pronouncement (supra.) of a reasonable gauge, namely: _those values and norms "so rooted in the traditions and conscience of our people as to be ranked as fundamental."_ (Id. at 169).

When Lyndon Johnson was urged to appoint a black person to the Supreme Court, he stated (note that the undersigned attorney has redacted the "N" word; although, the President used the word in its entirety because decency in 1965 was not offended by use of the word:

> _"Son, when I appoint a n_____r to the bench, I want everybody to know he's a n____r. [Said to an aide in 1965 regarding the appointment of Thurgood Marshall as associate justice of the Supreme Court]"_
> Quote by Lyndon B. Johnson: "Son, when I appoint a n   r to the bench, I wa..." (goodreads.com);  N-Word Reckonings in History and Literature | Pierre Tristam (flaglerlive.com)

As the then President told a journalist two days later, Justice Marshall's appointment was signaling that "the old fences are coming down." (N-Word Reckonings in History and Literature | Pierre Tristam (flaglerlive.com)). Similarly, Z.H. argues that old fences need to come down and this means that courts must evolve as does society.  The N word, despite its present horrid use in rap culture, has a stinging affect in 2022.  It offends "_those canons of decency and fairness which express the notions of justice of English-speaking peoples." (See Rochin at 169)._

As much as the N word was once accepted as fit for normal usage in social discourse, it is now rooted in our culture and conscience as wholly unacceptable (to most of us). There was no such sting in 1965 or prior. Case and point with a twist. The undersigned as a young police officer, remembers an older white officer upon being informed that the undersigned would be riding with him, quipped to the roll call sergeant, "*I don't ride with black officers.*"  I was not shocked by what the officer said; however, I was shocked that a white sergeant came to my defense.  The sergeant retorted, *"well Don you will be riding with one today.*"[3]

The white officer's statement did not shock my conscience or anyone else's for that matter. That is how American society "worked" [sic] 30 years ago.  In 2022, that conduct would shock the conscience.  Telling this story is not for the purpose of asserting that the undersigned would have had a basis for a lawsuit; rather, to assert that the Constitutional "shocks the conscience" barometer must be based on contemporary values and societal views. The *canons of decency and fairness which express the notions of justice of English-speaking peoples*" evolve and change with time.

Turning attention to the bodily integrity of women for which the Z.H. matter is concerned, a 2016 "Time" Magazine article better explains (than the undersigned could), where we started as society, in the treatment of women, to where we are today:

> "For most of American history, women silently endured mistreatment in the workplace, with little protection or recourse. During the 18th and 19th centuries, sexual coercion was a fact of life for female slaves in the South, as well as a common experience among free domestic workers in the North. In the early 20th century, women employed in new manufacturing and clerical positions confronted physical and verbal assaults from male supervisors. Union leadership was successful in enacting protective legislation that shielded women from performing physically demanding labor, but not from the propositions of lecherous bosses. By the 1920s, working women were advised to simply quit their jobs if they could not handle the inevitable sexual advances.

---

[3] The officer's name was not Don;  however, I want to protect his name and privacy.  He is dead but before he died, he and I became the best of friends and frequent partners in a two man beat car.

> *For decades, there were few significant changes in the ways women were treated at work. Those who complained discovered that sexually predatory behavior on the job was dismissed as trivial and harmless. Women rarely talked openly about the issue, although the situation only became more pressing as their participation in the workforce increased throughout the 1960s and 1970s."*

Source:    Before Anita Hill: History of Sexual Harassment in the U.S. | Time

Z.H., a 17-year-old high school on a ride along, was subjected to having her breasts and buttocks rubbed by an on-duty police officer, namely Garcia  (Compl 15-16) and at various times (far more than once or fleeting) while driving Z.H. around, Officer Garcia would place his hand on one of Z.H.'s legs, all of the sexual touching done, without Z.H.'s consent. *(Id. at* 20).[4] Unequivocally, without a doubt, the unlawful sexual touching of a minor by a sworn police officer, on duty, entrusted with the care of the minor, would not have shocked the conscience until very recently in historical time in our society. No one should argue against the fact that our country has undergone a transformation as to how society and courts define 14th Amendment protections (inter alia) for women and the criteria to make for objectionable behavior towards women.

Throughout the ride-along, Officer Garcia, the cop to whom the teenage ride-along was entrusted, asked Z.H. about her dating and sex life. *(Compl* 28).  Additionally, Officer Garcia stopped a prostitute, introduced her to Z.H., and told her that Z.H. wanted to become a prostitute. *(Compl* 27). Importantly, Z.H. never said any such thing; rather, a police officer entrusted with the care of a minor tried to arrange for her to participate in prostitution; although, a cop taking a person on a ride-along, has the obligation of educating the participant as to police work. And, because she was 17 and in high school, Garcia had an added obligation of protecting Z.H.

---

[4] While in line, Officer Garcia put his hand on Z.H.'s buttock without her consent. *(Compl* 19.)

Garcia. Instead, for his personal gratification and as a representative of the city of Hammond, he molested, assaulted, and traumatized the 17-year-old girl.

High School class trips and or projects should not involve sexual molestation and assault by police officers. It should be realized that it is every parent's nightmare that their teenage daughter, pursuant to a high school project, ends-up in this situation which is by definition dire and downright terrifying for a teenager.

What makes Z.H.'s traumatic experience the most shocking is when Garcia drove Z.H. to a secluded location and met another officer there. *(Compl* 22-23). This writer emphasizes that it was a secluded location. Two men in police uniforms present and one female, the plaintiff, a petite female. Officer Garcia, a very muscular man, in Z.H.'s presence, asked the other male officer if he wanted to have sex with Z.H --and Garcia did not stop there, rather, repeated the question more than once. No laughing no humor, rather, --in a secluded area, Garcia, as an authority figure with government conferred power to use force and to cause compliance sought for the occurrence of intercourse repeatedly. Z.H. was well aware the enormous held by the two officers as she cowered. The power had by police officers and its impact on citizens is well documented in peer reviewed scientific research. See by example, Timothy Maher's *Cops on the Make: Police Officers Using Their Job, Power, and Authority to Pursue Their Personal Sexual Interests,* 7 JIJIS 32 (2007)). And, Garcia deputized by government, and imbued and emboldened with the power of "government," offers the 17-year-old for sexual intercourse [for Garcia's sexual gratification]. *(Compl* 24-25.). Z.H. was both terrified and offended by Officer Garcia's conduct. *(Id.* 24). Most important, Garcia's action in the secluded area, was for personal gratification, not for a law enforcement purpose. This part of the 14th Amendment deprivation of rights saga --especially-- makes Z.H.'s experience a viable 14th Amendment violation --as much

as her ordeal is distinguishable from the cases cited by the District Court as not meeting the shock of conscience standard and for which the court asserted Z.H.'s facts were no different.

Here we have a terrified teenager, who has no idea if the second officer will agree to rape her (nothing in the Complaint avers that Z.H. would have willingly had sexual intercourse with the other officer).

What shocks the conscience is relative to time and place, and societal norms among other phenomena. Clearly the United States and its people have evolved.

a). Personal Gratification

In *Kane v. Barger* 902 F .3d 185, 188 (3d Cir.2018), the court characterized the right at issue as "an individual's right not to be sexually fondled and illicitly photographed by a police officer investigating his or her case, for the officer's own gratification." (*Id.* at 195). For a high school student to satisfy the educational objectives of a police ride along set forth by a municipality, inter alia (and its concomitant high school project objectives set forth by the teacher) sexual Intercourse with a police officer is absolutely not appropriate or necessary. Simply stated, Garcia offended Z.H.'s14th Amendment rights. His intent to cause Z.H. to have intercourse with the other officer was not in the furtherance of educating Z.H. (the ride-along purpose) nor was there an evidentiary purpose and certainly did not comport with the education experience for which ride-alongs represent to a participant. In the instant case, realizing that a constitutional violation afoot, is equally about what Officer Garcia did, as well as what he represents (as a police officer) in American society.

### III.     The Shock the Conscience History

The U.S. Supreme Court established the "shock-the-conscience test" in *Rochin* (1952)*, supra.* Recall the *English-speaking people's language* verbiage used by the Rochin court.  In

1952, the year Rochin was published, English-speaking peoples had no qualms with a lack of canons, a lack of decency, and a lack of fairness in and of societal norms as to women and against women. Where a cannon of decency in 1952 held little prohibition value of physical and sexual mistreatment of women, the case law of 1960's improved the rights landscape – as the calendar moved forward  --one decade to the next, to the present-- so too have women rightly benefited. If Justice Harlan could come back to life in 2022, he would likely be troubled at the [equal] rights now afforded to blacks, and that women can sue their husbands, as well as sue their bosses for sexual misconduct. Compare *Thompson v. Thompson*, 218 US 611 (1910) in which Justice Harlan writing for the majority lamented the radicalism of legislation and or court interpretation which enabled women to bring suit against the men (the husbands) who physically abused them.[5]

It did not shock the conscience if a man beat his wife in public in 1942, just as what happened to Z.H. --had it happened in 1942 or 1992, it would not have shocked the conscience; therefore, would not have met the burden for a substantive due process claim because of how society once defined cannons of decency, etc.

An anomaly of a case is found in 9th Circuit jurisprudence. An opinion way before its time, namely the year 2001 holding that the shock the conscience standard had been satisfied (and not surprisingly, although not overturned, Westlaw notes that, in the distant past, it was given negative treatment at least seven times). This 9th Circuit  foreknowledge[able] case of decency premonition value, is helpful, namely *Fontana v. Haskin*, 262 F. 3d 871 (9th Cir. 2001).

---

[5] Justice Harlan having written: "The possible evils of such legislation might well make the lawmaking power hesitate to enact it. But these and kindred considerations are addressed to the legislative, not the judicial branch of the Government. In cases like the present, interpretation of the law is the only function of the courts." (Thompson at 618).

No doubt that Defendant Garcia's response brief will holler that Fontana, the female victim in

the 9th Circuit case, was in custody.  Z.H. retorts that it does not make a difference if she (Z.H.)

was in, or was not in custody. As the Fontana court remarked, Fontana's claim could have fit

under the Fourteenth Amendment (Id. at 881). The point is that arrest is not needed, rather a

frightened high school student entrusted to a police officer who abuses her should enable a

finding of a substantive due process offense to bodily integrity. The Court writing in Haskins as

to the victim:

> "*She plausibly claims to have been so frightened by Haskin's acts that she feared she was
> being taken to an unknown destination, rather than the police station. Haskin's alleged
> acts — both the physical touching as well as the comments he is alleged to have made —
> if they occurred as described, were an abuse of power and, under the circumstances,
> unreasonable intrusions into Fontana's bodily integrity in violation of the Fourth
> Amendment.*" (Id. at 880,881).

Front and center the instant matter where a young girl (Z.H.) is taken to a secluded area (by

Officer Garcia) and she is now alone with two police officers, one of whom, at this point in time,

has already molested her (having grabbed onto her buttocks, breasts, and legs [citations, supra.]),

assaulted her and peppered the young girl with exhortative and persuasive sexual talk. Not just

any talk, but constant and pervasive chatter, and for which Garcia ensued because he was

banking on [sic] that his one sided diatribe would lead Z.H. to have sex with him.  That is how

Officer Garcia used the police powers entrusted to him by city of Hammond government, its

mayor, city council, along with the taxpayers and mothers of daughters.

Now Z.H. is in a secluded place with the offending officer and a second male officer.  But

Defendant Garcia wants a throwback in time, so he tells us in his district court briefs that a

member of U.S. society in 2021-2…, is instructed not to conclude that this scenario rises to the

level of a Constitutional violation; although, the offender (Garcia) is not a mailman or public

sanitation worker, rather, a sworn police officer. Garcia's perspective is nonsensical and misses the point that what shocks the conscience depends on societal norms. What matters is historical time, place, and space in sociological and societal thought processes of cannons of decency etc. [in a given society].

Once again, the Fontana' court opinion was way before its time (but boding with the 9th Circuit's approach to favoring women's rights) wrote: "*Even were we to apply the Fourteenth Amendment analysis, we would reverse the summary judgment. Under the Fourteenth Amendment's substantive due process prong, we use the "shocks the conscience"* test. (*County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998)). The threshold question is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." (*Id.* at 848 n. 8, 118 S.Ct. 1708). The 7th Circuit panel is asked to consider the importance of the word usage, namely "contemporary." What is contemporary in 2022 was not necessarily contemporary in 2002. What is egregious in 2022 was not necessarily egregious in 2002, 1992, or 1952.

As a Society evolves, what was "normal" in the past may not be normal or contemporary in the present nor was egregious in the past. The starkest example in our history is found in *Plessy v. Ferguson*, 163 US 537 (1896). The Plessy Court having written passages which boded with "societal" thought and opinion in 1896:

> "While we think the enforced separation of the races, as applied to the internal commerce of the State, neither abridges the privileges or immunities of the colored man, deprives him of his property without due process of law, nor denies him the equal protection of the laws, within the meaning of the Fourteenth Amendment… (Plessy at 548).

In another passage, the Plessy court having written:

It is claimed by the plaintiff "*that, in any mixed community, the reputation of belonging to the dominant race, in this instance the white race, is property, in the same sense that a*

*right of action, or of inheritance, is property. Conceding this to be so, for the purposes of this case, we are unable to see how this statute deprives him of, or in any way affects his right to, such property. If he be a white man and assigned to a colored coach, he may have his action for damages against the company for being deprived of his so called property. Upon the other hand, if he be a colored man and be so assigned, he has been deprived of no property, since he is not lawfully entitled to the reputation of being a white man*." (Id. at 549)

Although *Oncale v. Sundowner Offshore Services, Inc*., 523 US 75 (1998) speaks to

mistreatment of women in the workplace, the Oncale court conveys a valuable barometer, like

the one for which Z.H. advocates, namely:

[T]*he "real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive*." (Onacle 81-82).

Having presented the above passage, now Z.H. argues that the notion of normalcy is malleable

and changes over time.  Malleability cannot be emphasized enough by Z.H.  Gone are the days

when a husband who has sexually assaulted his wife can avoid a tort consequence by virtue of

marriage. Where society or a court in 1952 would not have found a man having physically forced

his wife into intimacy as shocking the conscience, --in 2022, such conduct would be  --and,

importantly, based on the criteria set forth in Rochin in 1952 and supported from an earlier time

by Justice Cardozo's foresight. Just as a nonconsensual-unwelcome slap to a woman's buttocks

would not have implicated sexual harassment and sexual misconduct until very recently.

How federal courts interpret bodily integrity violations of women should be commensurate

with what society defines as sexually abhorrent. Whether it is indignancy or that we dig in our

heels [sic] and remain tethered to court interpretations of ten or twenty years ago, we lose as a

society as much as our judicial system idles. Fortunately, this Circuit and others, joined with Supreme Court, has adapted to our changing society. By example, the 7th Circuit's opinion in *Hively v. Ivy Tech Community College of Indiana*, 853 F. 3d 339 (7th Cir. 2017) in which the Circuit did what the naysayers said would never happen (sex discrimination includes sexual orientation). Let's not forget Brown v. Board of Education of Topeka, 347 U.S. 483 (1954).

The Defendants and the District Court in the instant matter (Z.H.) relied on cases of more than a decade old and older. There is reason there is not a plethora of recent cases. Our society has evolved and progressed. There won't be a plethora of cases. The District Court's reliance on older cases which do not reflect contemporary (2022) notions of shocking the conscience behavior is not helpful. One such opinion relied upon was Judge Lozano's "Decker" ruling[6] (see Dkt 23 at 9-10), which we now know, in 2022, was plain wrong as much as it was a slap in the face to the bodily integrity of all women. We have evolved as a society; therefore, we now know (emphasis on now as opposed to then) that the Dred Scott decision (*Dred Scott v. Sandford*, 60 US 393 (1857)) was wrong as much as the Decker decision was wrong. And we now realize that the Court was shamelessly wrong in *Plessy Ferguson*, supra.

Granted as to Decker and Plessy, the Rochin standard was not yet in existence. But in 1856 or 1906, how many people in America would have concluded that a slave master's denial of freedom to a black slave shocked the conscience? Answer: Very few. Just like in 2005, one abhorrent action toward a woman was not enough. By 2010, we evolved as evidenced by the holding.

*Berry v. Chicago Transit Authority,* 618 F. 3d 688, passim (7th Cir 2010).

---

[6] *Decker v. Tinnel,* No. 2:04-CV-227, 2005 WL 3501705 (N.D. Ind. Dec. 20, 2005).

From 1883 to 1967, American values and culture included that blacks and whites should not marry. (See *Pace v Alabama,* 106 U.S. 583 (1883)). Few consciences were shocked and no court who hold that a complaint-cause of action would viable, rather, it would be frivolous. When a black man named Tony Pace and a white woman named Mary Cox challenged the law, the Supreme Court upheld it—on grounds that the law, inasmuch as it prevented whites from marrying black people *and* black people from marrying whites, was race-neutral and did not violate the Fourteenth Amendment. It took an inordinate amount of time before society improved on what it defined as cannons of decency. The year was 1967, and the case was *Loving v. Virginia*, 368 U.S. 1 (1967).  In the rubric presented by Z.H., Loving is a clarion call for subordinate courts' attention. The Loving court implicates cannons of decency and societal conscience, since the Rochin language imposes on courts an obligation to consider where society stands on a particular issues… societal thoughts, values, and norms, inter alia. The Rochin language provides us with a straightforward test (as does Oncale, supra).  What shocks the conscience must be subject to a malleable barometer. The barrage of cases more than a decade old which limit a woman's success on bodily integrity claims, must be understood as dastardly and atavistic relics of yesteryear that have no place in court analyses of the sexual exploitation of women and minors by police officers in the 21st century.

Policing is a prestigious and admirable profession. The reality is most cops don't behave as did Officer Garcia. The weighty symbolism of a cop in our society is mammoth. An abuse of the authority that comes with such symbolism implicates a constitutional violation, when and where a 17-year-old high school student is in the safety of her home and then, pursuant to a school assignment, coupled with a police agency's goal to educate the public through ride-alongs, she is thrust into wondering in she is going to raped while on a ride-along, joined with

the fact that one of the officers having touched her intimately, repeatedly, coupled with incessant one-sided talk of sex.

### IV. Qualified Immunity

Officer Garcia argues that Z.H.' s complaint should be dismissed because [he asserts] that he is entitled to qualified immunity. Pursuant to a qualified immunity defense, Officer Garcia would be entitled to dismissal unless: "(1) the plaintiff adequately alleged facts that, if true, would constitute a violation of a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the alleged violation, such that a reasonable public official would have known his conduct was unlawful." *Hanson v. Le Van,* 967 F .3d 584, 592 (7th Cir. 2020).

It is without a doubt that the acts complained of by Z.H. constitute a violation of a constitutional right held by Z.H., supra. While entrusted to the care of a police officer, Z.H. was physically abused by the police officer, acting under color of law, to include that the "minor" victim was taken to secluded area, offered to another officer for the purpose of sexual intercourse (understandably causing trauma to Z.H.; as well, the "mind" of a reasonable female teenager in that terrifying government created situation would race [sic] and wonder if she is going to be raped based on the conduct of the state actor on behalf of the government) represents a constitutional violation.

It goes without saying that the rights (plural) of Z.H. were 'clearly established' at the time of the alleged violation, such that a reasonable public official, namely Garcia, would have known his conduct was unlawful. Likewise, Chief Doughty is not entitled to qualified immunity.  Z.H. complained to the Hammond Police leadership *(Id* at 31). Chief Doughty was the police chief of the Hammond Police Department at the time of Z.H.'s ride-along. *(Id*  at 6.) Chief Doughty knew that Officer Garcia was being sued for sexual misconduct at the time of the

ride-along. *(Id.* at 32- 33). The Hammond Police Department also had an internal policy

prohibiting ride-alongs with minors. *(Id.* at 13).  Additionally, a reasonable seasoned police chief would

have realized that Z.H.s 'clearly established' rights at the time of the alleged violation, and that

such reasonable public official would have

known Garcia's conduct was unlawful. (See Hanson, supra).

### V. Equal Protection Claim

Z.H. alleges that Officer Garcia violated the Equal Protection Clause and treated her

differently because she is female. (Compl at 35; DE 21 at 11).

To state a claim under the Equal Protection Clause, Z.H. must show that "a state actor

purposefully discriminated" against her because of her "identification with a particular

(presumably disadvantaged) group." *Sherwin Manor Nursing Ctr., Inc. v. McAulijfe,* 37 F.3d

1216, 1220 (7th Cir. 1994). Z.H. must allege that she "has been intentionally treated differently

from others similarly situated and that there is no rational basis for the difference in treatment."

*Geinosky v. City of Chi.,* 675 F.3d 743, 747 (7th Cir. 2012).

The district court held that Z.H.'s lack of presentation of a comparator was

disadvantageous. At the motion to dismiss stage, Plaintiff Z.H. has no duty or obligation to

present a similarly situated person and or comparator. (See *LaBella Winnetka, Inc. v.Village of

Winnetka,* 628 F.3d 937, 942 (7th Cir. 2010)). In satisfaction FRCP 8 and *Bell v Twombly*, infra.,

the Complaint avers that female ride-along passengers were treated differently, and that Officer

Garcia acted intentionally to discriminate against her. (Compl at 35-36). The totality of the

Complaint is that Garcia engaged in intentional torts as opposed to negligence. Moreover, the

Complaint makes clears at various points that all previous paragraphs are incorporated herein. (E.g., at ¶40). The equal protection claim incorporates the "facts section" of the Complaint.

The District Court's position that the Complaint needed to state that Officer Garcia gave ride-alongs to males is in error. At a minimum, the court should have been dismissed the claim without prejudice. It was an abuse of discretion for the court to disallow Z.H. to cure what the court deemed as pleading deficiencies.

Five factors, first enunciated in *Foman v. Davis*, 371 U.S. 178, 182 (1962), govern. All five factors cut in Z.H.s favor: (1) There was no undue delay because Z.H. had no idea that the complaint would be narrowly construed; (2) Z.H. did not act in bad faith; (3) Z.H. had never previously amended her complaint; and (4) Defendants Garcia and Hammond would not be prejudiced. As for the fifth factor, Z.H. claim is not futile. Clearly the court implied that had it had more information, it may have decided in the alternative.

Z.H. argues that *Swanson v. CITIBANK, NA*, 614 F. 3d 400 (7th Cir. 2010) supports her position that she sufficiently pled and that the District Court's bar (in her case) was simply, and unnecessarily too high. (*Cf. Swanson* at 403-405). The majority in Swanson held that a pleader "state a claim to relief that is plausible on its face" (Id. and see *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570; *Ashcroft v. Iqbal*, 556 US 662; 129 S.Ct. 1937, 1949 (2009)).

For Plaintiff's equal protection claim, she asserts that she is female (a protected class) and that she was treated differently (mainly in a discriminatory fashion) because she is female.[7] Her sex, namely female is the class for which Garcia and Doughty targeted. Whether a showing of disparate treatment is needed as argued by Mr. Doughty, is an unresolved issue. The Seventh

---

[7] To establish a prima facie violation of the Equal Protection Clause, plaintiff must show that (1) she is a member of a protected class; (2) she is similarly situated to members of *another* class; and (3) she was treated differently from members of that other class.

Circuit summarized the *Del Marcelle* decision in *D.B. ex. rel. Curtis B. Kopp*, 725 F. 3d 681 Court of Appeals (7th Cir 2013) stating that "[s]ome members of the court thought the plaintiff should be required to plead and prove that the disparate treatment was motivated by personal ill will or other illegitimate purpose; that is, a purpose unrelated to public duty." Others expressed the view that personal animus or other improper motive is not an element of the claim but just one way to prove that the defendant's action lacked a rational basis. *(Id. at 685 and see Del Marcelle*, 680 F.3d at 889 (Posner, J.) (plurality opinion) (writing for four members of the court). *See id.* at 913–14 (Wood, J., dissenting) (writing for five members of the court)).

The Seventh Circuit Court has stated that on an equal protection claim "the ultimate inquiry is whether the sexual harassment **constitutes intentional discrimination**. *Bohen v. City of East Chicago, Ind.,* 799 F. 2d 1180, 1187 (7th Cir 1986); see also *Ascolese v. Southeastern Pennsylvania Transp. Authority*, 902 F. Supp. 533, 547 (E.D. Pa. 1995) ("Because the analysis under section 1983 focuses on intentional discrimination, it differs from that under Title VII) (citing Bohen). Plaintiff Z.H. alleges intentional discrimination by Garcia and Doughty. Z.H. asserts that the discrimination was purposeful and intentional based on her membership in a class, as opposed to discrimination on an individual basis. *Id.; see e.g., Sims v. Mulcahy,* 902 F.2d 524,538 (7'h Cir. 1990); *see also McPhaul v. Board o/Com 'rs of Madison County,* 226 F.3d 558,564 (7th Cir. 2000).

### VI. Claims against Chief Doughty

Like, with the equal protection claim, where the Plaintiff argues (in the previous section of this brief) the dismissal should not have been with prejudice, so too does she make the same argument as to the dismissal of claims against Chief Doughty. Plaintiff incorporates herein, the argument, supra., in its entirety.

Z.H. sued Chief Doughty in his individual capacity under a theory that he failed to train or supervise Officer Garcia.

## a. Doughty's Personal Involvement

Defendant Garcia was sued in 2017 by fellow police officer Denise Szany. She alleged that Garcia, while on duty, sexually assaulted her. (See *Szany v. Garcia, et al.*, 17cv00074, in the Northern District of Indiana). Chief Doughty was the chief at the time of the sexual assault and the suit. Furthermore, in January 2018, he was deposed in the Szany matter. With such extensive knowledge of Garcia's tendency to commit sexual assaults against women, Doughty failed to issue an order prohibiting Officer Garcia from having female e ride-alongs. At the time Mr. Doughty failed to issue such an order, he was acting under the color of law. The phraseology acted with deliberate indifference language found in the complaint, is not intended to implicate Monell. *Iqbal does not hold that Plaintiff's averments are predicate for granting a motion to dismiss.,* 556 U.S. at 678.[8] Moreover, the language should attenuate Plaintiff's complaint, since Plaintiff very much means to aver that that by allowing Garcia to have a female ride-along, Mr. Doughty knew a substantial risk of serious harm exist[ed]," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) at 837, and that his "subjective response was so inadequate that it demonstrated an absence of professional judgment." (*Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)).

Defendant Doughty was "personally involved in authorizing the ride-along. *See Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir, 2001) holding that "to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct." Doughty participated in deprivation of ZH's constitutional rights because he authorized the ride-along. In Hammond

_____

[8] Plaintiff ZH does not confuse an individual's liability with municipal liability, rather Plaintiff uses terminology which best describes misconduct by Defendant Doughty. If the Plaintiff intended to bring a Monell, she would have done so.

because of the small size of the police department, ride-alongs are approved by the chief of police. He caused the deprivations averred because he authorized the ride-along when he was on notice that Garcia was being sued for sexual assault in *Szany* at the time of the ride-along.

Simply stated, Plaintiff Z.H. has averred that Doughty exercised more than just supervisory authority over Garcia. Z.H. avers that Defendant Doughty participated in the violations averred by his allowing for the ride-along to occur to include having authorized it.

The knowledge of a supervisor of his officer's past conduct, is determinative of the supervisor's liability. A supervisor's knowledge of his officer's alleged tendencies to engage in sexual misconduct can be a basis for liability. In *Perez v. Fajardo*, #01-1143, 257 F. Supp. 2d 467 (D. Puerto Rico 2003), the court ruled that a police superintendent could be sued for liability for alleged sexual abuse of eighth grade female student by a police officer assigned to school, based on alleged failure to properly select, train, evaluate and supervise the officer. (*Cf.* Similarly, in *Romero v. City of Clanton*, #02-A-631, 220 F. Supp. 2d 1313 (M.D. Ala. 2002), the court found that a police chief was not entitled to qualified immunity on a detainee's claim that one of his officers falsely arrested the detainee and tried to sexually molest him. The Court held that the complaint presented sufficient allegations that the city ignored a known or obvious risk that the officer was highly likely to engage in sexual misconduct and abuse of power and inadequately screened him. Likewise, Defendant Doughty had personnel knowledge of Garcia's tendency to engage in sexual assaults based the case *Szany v Garcia* and that it was pending when Doughty authorized the ride-along; therefore, he can be liable for failing to take action to prevent a risk that he knew existed.

**b.** **Defendant Doughty's Claim that Garcia's Conduct**
    **does not Shock the Conscience**

Defendant Doughty states in his motion to dismiss at page 11, Dkt 21, as to what Z.H.

experienced at the hands of Garcia --that such is "*not conscience-shocking and, therefore, does*

*not rise to the level of a substantive due process violation.*" Speaking to her complaint

averments, Plaintiff asserts that sexually assaulting a child, molesting and groping a minor, and

attempts to pimp her out [sic] to other police officers for sex, shocks the conscience.  Mr.

Doughty's position marginalizes the rights of minor-age females and adult women to be free of

sexual assault and victimization. Mr. Garcia's conduct rises to the level of a 42 U.S.C. 1983

violation. Furthermore, it should shock the conscience that Mr. Doughty did not prevent Garcia

from taking females on ride-alongs when he knew of Garcia's history. See the following news

link as the Plaintiff's victimization: Hammond Police Officer Jaime Garcia Resigns Under

Scrutiny; Sources Say Incident In Question Involves A Woman – CBS Chicago (cbslocal.com)

and see Female students accuse former Hammond cop of sexual misconduct during ride-alongs,

records show | Crime and Courts | nwitimes.com


## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Seventh

Circuit reverse the District Court decision joined with a remand order and any other relief the

Court deems appropriate.

**Respectfully,**

/s/Christopher Cooper, ESQ., Counsel for Plaintiff
Law Office of Christopher Cooper, Inc.
105 W. Madison Street, Ste. 1350, Chicago, IL 60602
Tel: 312 473 2968 [or] 219 228 4396 | cooperlaw3234@gmail.com

<u>CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)</u>

The undersigned, counsel of record for the Plaintiff-Appellant, furnishes the following in compliance with F.R.A.P Rule 32(a)(7): I hereby certify that to the best of my ability and average computer knowledge, this Opening Brief conforms to the rules contained for a brief produced with a proportionally spaced font. The written part of the brief contains 25 pages (8,181 words) not including the cover, Certificate of Compliance Page, and Table of Contents.

/S/Christopher Cooper, ESQ., Plaintiff-Appellant's Attorney

<u>CIRCUIT RULE 30(d) STATEMENT</u>

Pursuant to Circuit Rule 30(d), counsel certifies that all material, to the best of his knowledge and that which is required by Circuit Rule 30(a) and (b) are included in the appendix.

/S/Christopher Cooper, ESQ., Plaintiff-Appellant's Attorney

<u>CIRCUIT RULE 31€ CERTIFICATION</u>

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 31(e), versions of the brief and all of the appendix items that are available in non-scanned PDF format.

/S/Christopher Cooper, ESQ., Plaintiff-Appellant's Attorney

<u>CERTIFICATE OF SERVICE</u>

The undersigned affirms that he caused e-filing of the foregoing on ECF on July 7, 2022, and that Respondents-Appellees are registered e-filers.

/S/Christopher Cooper, ESQ., Plaintiff-Appellant's Attorney

/S/Christopher Cooper, ESQ., Counsel for Plaintiff-Appellant
Law Office of Christopher Cooper, Inc.
105 W. Madison Street, Ste. 1350, Chicago, IL 60602
Tel: 312 473 2968 [or] 219 228 4396 | cooperlaw3234@gmail.com

# SHORT APPENDIX

# Appendix A

# Opinion and Order

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

Z.H.,

      Plaintiff,

      v.

      Case No. 3:21-CV-101 JD

OFFICER JAMIE GARCIA and CHIEF

JOHN DOUGHTY,

      Defendants.

**OPINION AND ORDER**

Plaintiff Z.H. sued Defendants Officer Jamie Garcia and Chief John Doughty of the

Hammond Police Department in their individual capacities under 42 U.S.C. § 1983. Z.H. alleges

that Officer Garcia violated her Fourteenth Amendment substantive due process right and the

Equal Protection Clause during a ride-along in his police car by subjecting her to unwanted

touching, insinuating comments, and otherwise degrading behavior.[1] She also claims that Chief

Doughty is liable for Officer Garcia's conduct because he failed to train or supervise him.

Defendants Garcia and Doughty moved to dismiss the complaint for failure to state a

claim and judgment on the pleadings. If the allegations in the complaint are true, Officer

---

[1] In her complaint, Z.H. also alleges that Officer Garcia falsely imprisoned her in violation of the Fourth
Amendment, but she has now withdrawn that claim. (DE 21 at 10.)

Garcia's conduct toward Z.H. was reprehensible and worthy of discipline. It may have further implicated state law considerations, but this lawsuit brings claims only under the Fourteenth Amendment of the United States Constitution, which has a limited scope and which does not encompass Z.H.'s grievance. Accordingly, the Court will grant Defendants' motions to dismiss.

## A. Statement of Facts

Z.H. alleges that Officer Garcia sexually harassed her while she participated in a ride-along in his police car, and that Chief Doughty knew or should have known that Officer Garcia had a history of sexual misconduct and failed to prohibit the ride-along. Z.H. seeks punitive damages against Officer Garcia in addition to compensatory damages and attorneys' fees against both Defendants. (DE 1 at 6–7.)

Z.H. was a seventeen-year-old student at Ancilla College in Plymouth, Indiana, when she participated in a ride-along with Officer Garcia on February 15, 2019. (*Id.* ¶ 9.) Z.H. needed to participate in a ride-along as part of her studies and knew Officer Garcia. (*Id.*) Officer Garcia picked her up at Ancilla College and drove her to the Hammond Police Department. (*Id.* ¶¶ 10–11.) Officer Garcia showed her around and introduced her to several other officers. (*Id.* ¶ 12.) As Officer Garcia prepared for his shift, Z.H. observed him take several guns from his personal car and put them in his police vehicle. (*Id.* ¶ 14.)

During the ride-along, Officer Garcia touched Z.H. without consent on several occasions. After Z.H. got into his police car and put on her seat belt, Officer Garcia adjusted her seat belt and rubbed his arm against Z.H.'s breast. (*Id.* ¶¶ 15–16.) At various times while driving around, Officer Garcia placed his hand on Z.H.'s leg without her consent. (*Id.* ¶ 20.) At one point,

Officer Garcia and Z.H. got out of the car and were in line at a gas station. (*Id.* ¶¶ 18–19.) While in line, Officer Garcia put his hand on Z.H.'s buttock without her consent. (*Id.* ¶ 19.)

Throughout the ride-along, Officer Garcia asked Z.H. about her dating and sex life. (*Id.* ¶ 28.) While driving around, Officer Garcia found a prostitute, introduced her to Z.H., and told her that Z.H. wanted to do what she was doing. (*Id.* ¶ 27.) Officer Garcia also made an arrest with other responding officers during the ride-along. (*Id.* ¶ 21.) After that arrest, Officer Garcia drove Z.H. to a secluded location and met another officer there. (*Id.* ¶¶ 22–23.) Officer Garcia asked the other officer if he wanted to have sex with Z.H and repeated the question more than once. (*Id.* ¶¶ 24–25.) Z.H. felt scared and offended by Officer Garcia's conduct. (*Id.* ¶ 24.) At some point, the ride-along ended.

After Z.H.'s ride-along, Z.H.'s female classmate also went on a ride-along with Officer Garcia. (*Id.* ¶¶ 29, 33.) The classmate contacted Z.H. to ask about Officer Garcia's conduct toward Z.H. on her ride-along, and both reported their experiences to a teacher. (*Id.* ¶¶ 30–31.) That information was reported to the Hammond Police Department. (*Id.* ¶ 31.)

Chief Doughty was the police chief of the Hammond Police Department at the time of Z.H.'s ride-along. (*Id.* ¶ 6.) Chief Doughty knew that Officer Garcia was being sued for sexual misconduct at the time of the ride-along. (*Id.* ¶¶ 32–33.) The Hammond Police Department also had an internal policy prohibiting ride-alongs with minors. (*Id.* ¶ 13.) Z.H. does not allege that Chief Doughty participated in the ride-along himself.

Officer Garcia moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) and for judgment on the pleadings under Rule 12(c). (DE 17.) He argues that Z.H. has not pled facts rising to a constitutional violation and that, even if so, he is entitled to qualified immunity. (*Id.* at

1.) Chief Doughty also moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[2] (DE 9.)

## B. Standard of Review

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

Next, Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). The Defendants have not yet filed their answers to the complaint, electing instead to file motions to dismiss. Accordingly, in light of the express

---

[2] Chief Doughty also argues that the case should be dismissed under Rule 12(b)(1) for lack of jurisdiction. He directs this argument to "any state law claims," but there simply aren't any such claims, and Z.H. doesn't argue otherwise.

4

terms of Rule 12(c), Officer Garcia's motion for judgment on the pleadings is premature.[3] *See e.g.*, *Mabry v. City of E. Chicago*, No. 2:16-CV-402-JVB-JEM, 2020 WL 638897, at *2 (N.D. Ind. Feb. 11, 2020) ("Because the ECHA Defendants filed an answer to the complaint before filing the instant motion, the instant motion is a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).") However, the practical effect of his motion being filed too early is inconsequential. While there are several differences between deciding a motion under Rule 12(c) versus deciding it under Rule 12(b)(6),[4] Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017).

## C. Discussion

### (1) *Claims against Officer Garcia*

Z.H.'s claims against Officer Garcia in his individual capacity for violations of the Fourteenth Amendment are brought pursuant to 42 U.S.C. § 1983. As a preliminary matter, Officer Garcia submits that he was not acting under color of law when taking Z.H. on the ride-along, so he cannot be sued for constitutional violations. *Cf.* § 1983 (providing that, for the liability to attach, the wrongful action must be carried out "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia"). To determine if an officer's actions are under color of law, the Court considers whether, as alleged, they are related in some way to the performance of his police duties. *See United States v.*

---

[3] According to Federal Rule of Procedure 7(a), pleadings are: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."

[4] Under Rule 12(c), either party may move for judgment on the pleadings and both the complaint and the answer, as well as exhibits, may be considered for purposes of judgment on the pleadings. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998).

5

*Christian*, 342 F.3d 744, 751 (7th Cir. 2003) ("Deciding whether a police officer acted under color of state law should turn largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties."). Here, the complaint alleges sufficient facts to infer that Officer Garcia was acting under color of law when he touched Z.H. without her consent and harassed her. In particular, the complaint suggests that Officer Garcia was providing the ride-along for the purpose of giving Z.H. an insight into policing; he was on duty at the time of the ride along; and he was using a Hamond police car with some incidents occurring inside that car. Although in his briefs Officer Garcia would like to portray the ride-along as a sequence of events unrelated to his official duties, such characterization is not supported by the allegations in the complaint. The complaint suggests that the Hammond Police Department offered ride-alongs as part of its services to the community. The complaint also indicates that Z.H. was required to participate in a ride-along with a police officer. Construing all reasonable inferences in Z.H.'s favor, one can assume that Z.H. was not a mere civilian volunteer, but someone required to participate in a ride-along, and Officer Garcia was not a random officer assigned to bring her along, who then transgressed from his duties, but someone who assumed the duty as a Hammond police officer to provide an educational experience to Z.H. and then used his position to take advantage of her. Accordingly, the Court finds that the complaint sufficiently alleges that Officer Garcia acted under color of law.

Next, Officer Garcia argues that Z.H.'s complaint should be dismissed because he is entitled to qualified immunity. Pursuant to a qualified immunity defense, Officer Garcia is entitled to dismissal unless "(1) the plaintiffs adequately alleged facts that, if true, would constitute a violation of a statutory or constitutional right, and (2) the right was 'clearly

6

established' at the time of the alleged violation, such that a reasonable public official would have

known his conduct was unlawful." *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020). "It is at

this point the Rule 12(b)(6) defense and the qualified immunity defense become intertwined.

Under Rule 12(b)(6), [defendant] can defeat [plaintiff's] cause of action if their complaint fails

'to state a claim upon which relief can be granted.' Fed. R. Civ. P. 12(b)(6). As the Supreme

Court noted, '[a] necessary concomitant to the determination of whether the constitutional right

asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination

of whether the plaintiff has asserted a violation of a constitutional right at all.'" *C.C. ex rel.*

*Andrews v. Monroe Cty. Bd. of Educ.*, 427 F. App'x 781, 782–83 (11th Cir. 2011) (citing *Siegert*

*v. Gilley*, 500 U.S. 226, 232 (1991)) (other citation omitted). Therefore, the Court will examine

the complaint to determine if it states a violation of the Fourteenth Amendment. If it does, the

Court will move to the second step and will determine if the Constitutional right was clearly

established at the time of the alleged violation.

### (a) *Substantive Due Process*

A violation of substantive due process occurs when the alleged conduct "shocks the

conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998). "The Supreme Court

has noted that this standard lacks precise measurement, but has stated that the emphasis on

whether conduct shocks the conscience points toward the tort law's spectrum of liability. Only

conduct falling toward the more culpable end of the spectrum shall be found to shock the

conscience." *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007)

(citations and quotation marks omitted). It is clearly established that the liberty protected by the

Fourteenth Amendment substantive due process right "includes bodily integrity" and is infringed

by a serious, as distinct from a nominal or trivial, battery. *Alexander*, 329 F.3d at 916. Very serious batteries, such as rape and egregious sexual conduct, have been held as conscience-shocking deprivations of liberty in violation of substantive due process. *Id.* (citing *Wudtke v. Davel*, 128 F.3d 1057, 1060, 1063 (7th Cir. 1997) (holding that school district superintendent's escalating physical assault over several weeks, including coerced oral sex, was "serious physical assault" that stated a claim for a violation of substantive due process)).

As reprehensible as Officer Garcia's conduct toward Z.H. was, as alleged, it did not rise to the level necessary to violate her right to substantive due process. Z.H. likens her case to *Kane v. Barger*, a Third Circuit case, where a police officer violated the bodily integrity of a sexual assault victim when he took her to a secluded room at a police precinct alone and photographed her naked private areas on his personal cell phone, without evidentiary purpose. 902 F.3d 185, 188 (3d Cir. 2018). There, the court characterized the right at issue as "an individual's right not to be sexually fondled and illicitly photographed by a police officer investigating his or her case, for the officer's own gratification." *Id.* at 195. Finding that the defendant "acted for personal gratification rather than investigative ends," the Court held that his "conduct shocks the conscience and violated [plaintiff's] right to bodily integrity." *Id.* at 188. In fact, the right at issue was so "obvious" that it could be deemed clearly established without existing similar cases. *Id.*

Z.H. also relies on *Haberthur v. City of Raymore*, an Eighth Circuit case where a police officer followed the plaintiff home, drove by her house on various occasions, twice threatened to give her a ticket, repeatedly showed up in uniform at her place of employment, and on one occasion fondled her chest while making sexually suggestive comments. 119 F.3d 720, 723 (8th Cir. 1997). That court found that "sexual fondling and touching or other egregious sexual

8

contact" can violate substantive due process, and that the repeated nature of the officer's harassment and threats of adverse official action violated her personal integrity. *Id.* at 724.

But the alleged conduct of Officer Garcia is not as severe as the conduct of the defendants in *Kane* and *Haberthur* so as to shock the conscience. Z.H. does not allege that Officer Garcia's conduct took place over multiple encounters or that he threatened adverse official action as the officer did in *Haberthur*. Additionally, unlike the officer in *Kane*, Officer Garcia did not remove clothing from Z.H. and did not insist on her exposing herself so he could take pictures on his cell phone for mere self-gratification. Instead, during the same ride-along, Officer Garcia allegedly touched Z.H.'s breast once as he adjusted her seatbelt, then at various times placed his hand on her leg while driving around, and finally put his hand on her buttock while standing in line at a gas station. And, while—no doubt—Z.H. would have felt upset and even scared at his suggestive comments to the prostitute that she, too, wanted to be a prostitute and his repeated inquiry of another officer at a secluded location if he wanted to have sex with Z.H., these allegations fall short of shocking the conscience. *See Twyman v. Burton*, 757 F. Supp. 2d 804, 810 (S.D. Ind. 2010) (no substantive due process violation where duration of the defendant's harassment was not protracted, the defendant did not use force, and to the extent he committed an indirect battery by sex toy, the battery was not sufficiently severe); *Nagle v. McKernan*, 2007 WL 2903179 (N.D. Ill. 2007) (no substantive due process violation where fire marshal wrote love note and intimately pressed his face against plaintiff and breathed on her neck).

Moreover, a court in this district found that an officer who engaged in similar or even more egregious conduct than Officer Garcia did not violate a ride-along passenger's substantive due process rights. In *Decker v. Tinnel*, No. 2:04-CV-227, 2005 WL 3501705 (N.D. Ind. Dec.

9

20, 2005), the court held that an officer, who asked his eighteen year-old female ride-along passenger to strip, drove her to several locations and attempted twice to forcibly kiss her to which she responded by yelling "no," grabbed her chest over her shirt, forced his hand between her closed thighs, coming within an inch of her vagina, and briefly held his hand over her breasts, did not violate her right of bodily integrity. *Id.* at *1–2, *7–8.

In finding no violation of substantive due process, the court took into account the fact that the offensive behavior took place within a relatively short period of time, during one ride along. The touching lasted only for a matter of seconds and ended when the victim said no. Other than the touching was unwanted there was no evidence of force and no threats of force or display of firearms. And, although improper and depraved, the touching at issue did not rise to the level of egregious physical assaults present in cases that involved forcible rapes or other serious sexual molestations. *Id.* at *9. In concluding, the court observed that "[m]any harms, though caused by a state actor, do not fall within the scope of section 1983, for section 1983 does not turn the Fourteenth Amendment into a font of tort law that supersedes the tort systems already available under individual state laws." *Id.* (quoting *Gregory v. City of Rogers,* 974 F.2d 1006, 1009 (8th Cir. 1992). As recounted above, Officer Garcia's conduct was less severe than Officer Decker's. Likewise, like in *Decker,* Officer Garcia did not use a gun or other threat to coerce Z.H. into complying. Therefore, even if Z.H. allegations were to be proved true, they would not state a violation for substantive due process.

Z.H. argues that Officer Garcia's conduct was made worse— to the point of shocking the conscience—by the fact that she was seventeen at the time of the ride-along. Yet, her age alone does not present a sufficient basis to convert her grievance into an actionable complaint for a constitutional violation. Although she had not yet reached the age of majority, she was already a

10

college student, and, while various laws understandably accord special considerations to young

people until the day they turn eighteen, cases show that Z.H.'s age alone does not give rise to a

constitutional claim. Rather, the totality of circumstances must be considered. For example, the

Sixth Circuit in *Lillard v. Shelby County Board of Education* noted that a teacher's rubbing of a

high school student's stomach, along with a suggestive remark, was "wholly inappropriate, and,

if proved, should have serious disciplinary consequences . . . . But without more, it is not conduct

that creates a constitutional claim." 76 F.3d 716, 726 (6th Cir. 1996). In *Chama Valley*, the Tenth

Circuit held that gender-specific harassment of a twelve-year-old female student, where her

teacher called her a prostitute and permitted her classmates to taunt her, "gives it no greater

claim as a constitutional violation than verbal harassment generally." *Abeyta by & through*

*Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1256 (10th Cir. 1996). In

*Morris v. Dearborn*, the Fifth Circuit held that the right to bodily integrity was not violated for a

pre-school age child that typed sexually explicit messages guided by the instructor while sitting

on the instructor's lap. 181 F.3d 657, 666 (5th Cir. 1999). There, the court distinguished another

Fifth Circuit case, *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th 1994), where a child was

sexually molested by a teacher and held that *Doe* was "so far removed factually" from the facts

at issue that it did not inform the decision. *Id.* None of these cases lower the bar of egregious,

conscience-shocking behavior required to make a claim so obviously a violation of substantive

due process based on the plaintiff's status as a minor. Therefore, Z.H.'s status as a seventeen-

year-old is not a basis for distinguishing this case from *Decker*, where the defendant's similar—

or even worse—conduct during a ride-along did not violate the substantive due process rights.

Because Z.H. has failed to plead facts that, if true, could show that Officer Garcia's conduct

11

shocked the conscience as that term is understood in the context of the Fourteenth Amendment

jurisprudence, the Court must dismiss her substantive due process claim.

### (b) *Equal Protection Clause*

Next, Z.H. alleges that Officer Garcia violated the Equal Protection Clause and treated

her differently because she is female. To state a claim under the Equal Protection Clause, Z.H.

must show that "a state actor purposefully discriminated" against her because of her

"identification with a particular (presumably disadvantaged) group." *Sherwin Manor Nursing*

*Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994). Z.H. must allege that she "has been

intentionally treated differently from others similarly situated and that there is no rational basis

for the difference in treatment." *Geinosky v. City of Chi.*, 675 F.3d 743, 747 (7th Cir. 2012). "To

be considered similarly situated, a plaintiff and his comparators (those alleged to have been

treated more favorably) must be identical or directly comparable in all material respects. The

similarly situated analysis is not a precise formula, but we have stated repeatedly that what is

clear is that similarly situated individuals must be very similar indeed." *LaBella Winnetka, Inc. v.*

*Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010).

Z.H. alleges that she was subject to Officer Garcia's conduct because she is female. She

insists that she has stated a claim for equal protection because it is "plausible that a reasonable

person would conclude that Garcia's male ride-alongs were not groped, pursued for sexual

intercourse, and subject to an attempt to be pimped out for sexual intercourse." (DE 21 at 11.)

Yet her complaint does not allege that male ride-along passengers were treated differently[5] or

that Officer Garcia acted intentionally to discriminate against her. In fact, the only other person

---

[5]In fact, the complaint does not allege that Officer Garcia gave ride-alongs to any males.

mentioned in the complaint as a ride-along passenger with Officer Garcia is her female classmate. Like with her substantive due process claim, here too, Z.H. must adequately allege the facts that, if true, would constitute a violation of her rights under the equal protection clause of the Fourteenth Amendment. However, aside from a conclusory statement in paragraph 35 of the complaint that "the actions of Defendant Garcia were done with the intent of depriving the Plaintiff of her liberty, etc., and also in violation of equal protection of the law," the complaint is devoid of any allegation that Officer Garcia intentionally treated her "differently from others similarly situated and that there is no rational basis for the difference in treatment." *Geinosky*, 675 F.3d at 747. Such conclusory allegations do not entitle Z.H. to relief. *See McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) ("In reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, we accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth."). In addition, Z.H.'s two-sentence argument on the subject in her response brief (DE 21 at 11), without any reference to precedent or legal analysis, is as good as conceding that the complaint fails to state an equal protection claim. *See Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). To conclude, the Court finds that Z.H. has failed to state an equal protection claim against Officer Garcia.[6]

### (2) *Claims against Chief Doughty*

---

[6] Because Z.H. has failed to state any claims against Officer Garcia for which relief can be granted, she has also failed to show that Officer Garcia violated a constitutional right, so that the Court does not need to consider the second step of Officer Garcia's qualified immunity defense, that is, whether the rights were clearly established at the time of the ride-along.

Z.H. sued Chief Doughty in his individual capacity under a theory that he failed to train or supervise Officer Garcia, who allegedly violated her Constitutional rights. Setting aside the fact that there's no *respondeat superior* liability under § 1983, *see Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions," not the conduct or knowledge of the persons they supervise), Z.H.'s claims against Chief Doughty fail because, as explained above, she has not stated a claim for which relief can be granted against Officer Garcia. *See Est. of Phillips v. City of Milwaukee*, 123 F.3d 586, 596–97 (7th Cir. 1997) ("Having decided that the officers did not violate the Constitution, we must conclude that neither the City nor Police Chief Arreola can be held liable for Mr. Phillips' death."). Without a viable claim against Officer Garcia, it's impossible for Z.H. to prevail against Chief Doughty because the complaint doesn't suggest that Chief Doughty had any personal involvement with Z.H. *See Kelly v. Mun. Cts. of Marion Cnty.*, 97 F.3d 902, 909 (7th Cir. 1996) (a § 1983 suit requires personal involvement in the alleged constitutional deprivation to support a viable claim and the defendant must cause the deprivation at issue). Therefore, the Court finds that Z.H. has failed to state a claim against Chief Doughty, and the Court must dismiss all claims against Chief Doughty.

### D. Conclusion

For the foregoing reasons, the Court—

- DENIES Officer Garcia's motion for judgment on the pleadings as filed prematurely but GRANTS his motion to dismiss (DE 17) and dismisses Z.H.'s claims against him with prejudice; and

- GRANTS Chief Doughty's motion to dismiss (DE 9) and dismisses Z.H.'s claims against him with prejudice.

14

SO ORDERED.

ENTERED: March 21, 2022

/s/ JON E. DEGUILIO
Chief Judge
United States District Court

# Appendix B

# Complaint

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| Z.H., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     -vs- | ) CASE NO.: |
| | ) |
| OFFICER JAMIE GARCIA | ) |
| and CHIEF JOHN DOUGHTY, | ) |
| | ) |
|     Defendants. | ) |

**COMPLAINT**

Comes now, the Plaintiff, Z.H., by counsel, and hereby states this cause of action against

Defendants, Chief John Doughty and Officer Jamie Garcia, individually and in their individual

capacities:

**JURISDICTION**

1.    This cause of action is for damages based upon violation of the Fourth and

Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

2.    Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, 1343 (a)(3) and

1367.

3.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) because

Plaintiff and all Defendants either reside in this district or have their principle place of business

in this district, and all events giving rise to Plaintiff's claims occurred within this district.

**PARTIES**

4.     Plaintiff, Z.H. is an adult resident of Knox, Indiana.  She is now 19 years old.

5.     Defendant, Jamie Garcia, is sued in his individual capacities.  He is an adult resident of the State of Indiana, and was an employee of the Hammond Police Department and was acting under the color of law at all times relevant to this litigation.

6.     John Doughty, is sued in his individual capacities. He was police chief employed by the City of Hammond and acting under the color of law at all relevant times to this litigation.

**GROUNDS FOR RELIEF[1]**

7.     On or about February 15, 2019, Defendant, Jamie Garcia, was acting in his scope and capacity as a police officer for the Hammond Police Department at all times relevant to this claim.

8.     That as part of his duties with the Hammond Police Department, Defendant Garcia was required to make traffic stops, go on calls, investigate complaints, investigate crimes, take individuals into custody and transport individuals.

9.     The Plaintiff, Z.H. was 17 at the time and knew Defendant Garcia.  Z.H. was a student and as part of her studies needed to participate on a ride along with a police officer.  On February 15, 2019, Plaintiff, Z. H. went on a ride along with Defendant Garcia.

10.     On February 15, 2019, Defendant Garcia drove his private vehicle to Ancilla College, Plymouth, Indiana to pick up Z.H. and drove her to the police station before his shift started.

---

[1] All references to physical touching by Officer Garcia were without the plaintiff's consent

11. On February 15, 2019, Plaintiff Z.H. and Defendant, Garcia, arrived at the Hammond Police Department.

12. Defendant Garcia showed Plaintiff Z.H. around the police department and introduced her to several police officers.

13. The Hammond Police Department had a policy that forbade officers from permitting minors to go on ride alongs.

14. Prior to starting his shift, Defendant Garcia transferred several guns from his personal vehicle to his police vehicle in the presence of Z.H.

15. Defendant Garcia and Plaintiff Z.H., then got into a Hammond Police Department patrol vehicle.

16. After getting into the squad car, Plaintiff Z.H. put on her seat belt and Defendant Garcia, without her consent, started adjusting her seat belt and rubbing his arm against Z.H.'s breast.

17. Defendant Garcia did falsely imprison the Plaintiff.

18. Defendant Garcia took Plaintiff Z.H. to a bad area of Hammond where the gas station cashier was working behind bullet proof glass.

19. Plaintiff Z.H. was waiting in line behind Defendant Garcia at the gas station when Garcia had Z.H go in front of him and at this time Defendant Garcia placed his hand on Z.H.s butt without her consent.

20. Defendant Garcia and Plaintiff Z.H. drove around in the squad car and at various times Defendant Garcia would place his hand on Z.H.'s leg without her consent.

21. Late in the evening, Defendant Garcia and Plaintiff Z.H. went on a call where Defendant Garcia and other responding officers made an arrest.

22.     After the arrest, without Plaintiff's consent, Defendant Garcia drove Plaintiff Z.H. to a secluded area.

23.     At the same time, another unknown Hammond Police Officer also went to the same location.

24.     While at this location, the Defendant and other unknown officer had his window down and Defendant Garcia asked the other officer whether he wanted to have sex with Plaintiff Z.H.  Plaintiff was scared and offended by the Defendant's conduct.

25.     Defendant Garcia asked this unknown officer on more than one occasion whether he wanted to have sex with Plaintiff Z.H.

26.     Defendant Garcia and Plaintiff Z.H. were driving around and Defendant Garcia told Plaintiff Z.H that he was going to find a prostitute for her.  Plaintiff did not consent to such conduct.

27.     Defendant Garcia did stop a female prostitute who was walking the streets. Defendant Garcia introduced Plaintiff Z.H. to the working woman and told her that Z.H wanted to do what she was doing. Plaintiff never stated she wanted to be a prostitute.

28.     Defendant Garcia throughout the ride inquired into Z.H.'s dating and sex life. Plaintiff Z.H. was humiliated and embarrassed as to the conduct of Defendant Garcia.

29.     A classmate subsequently went on a ride along with Defendant Garcia.

30.     After the classmate's ride along with Defendant Garcia, the classmate contacted Plaintiff Z.H. inquiring about whether Garcia had acted inappropriately towards her.

31.     Plaintiff Z.H. and the classmate reported what happened to them on the ride along to a teacher and the information was reported to the Hammond Police Department.

32. Prior to these incidents, Police Chief John Doughty had known about inappropriate behavior on the part of Defendant Garcia with females.

33. Chief Doughty also knew and permitted the ride alongs by the girls while Defendant Garcia was being sued for sexual misconduct.

34. At all relevant times to this litigation, Defendant Garcia and Defendant Doughty were acting under the color of law and with intent.

35. That the actions of Defendant Garcia were done with the intent of depriving the Plaintiff of her liberty, etc., and also in violation of equal protection of the law which is guaranteed under the Fourteenth Amendment to the United States Constitution.

36. Defendant Garcia's actions were objectively unreasonable and shocking to the conscience and done to her in part because she is a female.

37. Defendant Garcia caused Plaintiff Z.H. to suffer humiliation and emotional distress.

38. Chief Doughty acted with deliberate indifference in his supervision, training and continued employment of Defendant Garcia as a Hammond Police Officer.

39. The deliberate indifferent training and supervision provided by the Defendant, Chief John Doughty resulted from an intent to violate Plaintiff's constitutional rights as well as a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant and were moving forces in the constitutional and federal violation injuries complained of by Plaintiff.

40. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered extreme humiliation and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages.

## COUNT I
### 42 USC 1983 - JAIME GARCIA

40.     Plaintiff re-alleges all aforementioned paragraphs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Z.H. demands the following relief against the Defendants, Jamie

Garcia, and Chief John Doughty:

a.      Compensatory damages for deprivation of her civil rights;

b.      Punitive damages against the Defendant Jamie Garcia;

c.      Reasonable attorney fees, together with costs and expenses of litigation pursuant
        to 42 U.S.C. §1988;

d.      Just compensation for injuries and damages sustained by the Plaintiff including
        damages for emotional distress;

e.      Compensatory damages based upon the state causes of action; and

f.      For all other just and proper relief in the premises pursuant to Federal Rule of
        Civil Procedure 54(c).

### COUNT II

### FAILURE TO RETAIN AND SUPERVISE APPLIES TO JOHN DOUGHTY

41.     Plaintiff re-alleges all aforementioned paragraphs.

42.     John Doughty knew that Officer Garcia should not have been retained as a police
officer.

43.     John Doughty knew that Officer Garcia should not have had a female ride along
in his police vehicle.

44.     John Doughty approved assisted condoned and purposely ignored the reasonable bases for which Officer Garcia should not have been in the company of the ride along. As a result Plaintiff was injured.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Z.H. demands the following relief against the Defendants, Jamie Garcia, and Chief John Doughty:

g.      Compensatory damages for deprivation of her civil rights;

h.      Punitive damages against the Defendant Jamie Garcia;

i.      Reasonable attorney fees, together with costs and expenses of litigation pursuant to 42 U.S.C. §1988;

j.      Just compensation for injuries and damages sustained by the Plaintiff including damages for emotional distress;

k.      Compensatory damages based upon the state causes of action; and

l.      For all other just and proper relief in the premises pursuant to Federal Rule of Civil Procedure 54(c).

Respectfully submitted,

/s/Benjamen W. Murphy
Benjamen W. Murphy, #21028-45
426 N. Broad Street
Griffith, IN 46319
P: (219) 922-0400
Email: benmur01@gmail.com
Attorney for Plaintiff

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully submitted,

s/Benjamen W. Murphy
Benjamen W. Murphy, #21028-45
426 N. Broad Street
Griffith, IN 46319
P: (219) 922-0400
Email: benmur01@gmail.com
Attorney for Plaintiff

# Appendix C

# Notice of Appeal

## IN THE UNITED STATES DISTRICT COURT
## FOR NORTHERN INDIANA

Z.H.,                                  ) CASE: 21cv101
     **PLAINTIFF,**                 )
        **v.**                 ) JUDGE DEGUILIO
JAMIE GARCIA, ET AL.,                  )
     **DEFENDANTS.**                )

## <u>PLAINTIFF'S NOTICE OF APPEAL OF DKT. 23</u>

NOW COMES Plaintiff Z.H., by counsel, Ben Murphy, and appeals a final

judgment of the District Court entered March 23, 2022, namely, Dkt. 23 which

is the Court's grant of Defendants' motions to dismiss.

Respectfully Submitted,
s\ Benjamen W. Murphy ESQ., Plaintiff's Counsel
Law Office of Ben Murphy
426 N. Broad St., Griffith, IN 46319
219922 0400  benmur01@gmail.com

CERTIFICATE OF SERVICE:  The undersigned affirms that he filed the
foregoing on ECF on 3/24/2022 and that Defendants are registered e-filers.
s\ Benjamen W. Murphy

# Appendix D

# Appearance

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-1550

Short Caption: Z.H. v Jamie Garcia, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Z.H.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
LAW OFFICE OF CHRISTOPHER COOPER, INC. (for the appeal);   LAW OFFICE OF BEN MURPHY (in the DC Ct)

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and
NONE

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
NONE

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

Attorney's Signature: s\CHRISTOPHER COOPER, INC.          Date: 4-5-2022

Attorney's Printed Name:   CHRISTOPHER COOPER

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes [✔]  No [ ]

Address:  426 N. BROAD STREET, GRIFFITH, INDIANA 46319 or 105 W. Madison St., STE 1350, Chicago, IL 60602

Phone Number: 2192284396 OR 312473 968          Fax Number:  8663347458

E-Mail Address: cooperlaw3234@gmail.com