No. 22-1550

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

Z.H.,
the Appellant/Plaintiff Below,
v.
OFFICER JAMIE GARCIA AND CHIEF JOHN DOUGHTY,
the Appellees/Defendants Below

Appeal from the United States District Court for the Northern District
of Indiana, South Bend Division, Cause No. 3:21-cv-00101
The Honorable District Court Judge Jon E. DeGuilio, Presiding

JOINT BRIEF OF DEFENDANTS-APPELLEES
OFFICER JAMIE GARCIA AND CHIEF JOHN DOUGHTY

Shana D. Levinson, #21350-45
LEVINSON & LEVINSON
384 W. 80th Place
Merrillville, IN 46410
Telephone: (219) 769-1164

*Attorney for Defendant-Appellee*
*Officer Jamie Garcia*

John M. McCrum, #9988-45
Ryan A. Cook, #26798-49
EICHHORN & EICHHORN, LLP
2929 Carlson Drive, Suite 100
Hammond, Indiana 46323
Telephone: (219) 931-0560

*Attorneys for Defendant-Appellee*
*Chief John Doughty*

## <u>CIRCUIT RULE 26.1 DISCLOSURE STATEMENT</u>

Appellate Court No: 22-1550

| Short Caption: | Z.H. v. Officer Jamie Garcia, et al |
|---|---|

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosures information required by Fed. R. App. P. 26.1 by completing item #3):

    Officer Jamie Garcia

(2)    The names of all law firms whose partners or associates have appeared in the case (including proceedings in the district court or before an administrative agency) or are expected to appear in this court for City of Officer Jamie Garcia are:

    Levinson & Levinson, Attorneys at Law

(3)    If the party or amicus is a corporation, please identify all its parent corporations, if any, and list any publicly held company that owns 10% or more of the party's or amicus' stock:

    Not applicable


Date: September 19, 2022

                    Attorney's Signature: <u>/s/ Shana D. Levinson</u>
                    Attorney's Printed Name: Shana D. Levinson

Please indicate if you are Counsel of Record pursuant to Circuit Rule 3(d): Yes.

Address: Levinson & Levinson, Attorneys at Law
384 W. 80th Place
Merrillville, IN 46410
219-769-1164 (Phone)
levinsonandlevinson@yahoo.com

i

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-1550

| Short Caption: | Z.H. v. Officer Jamie Garcia, et al |
|---|---|

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosures information required by Fed. R. App. P. 26.1 by completing item #3):

Chief John Doughty

(2)     The names of all law firms whose partners or associates have appeared in the case (including proceedings in the district court or before an administrative agency) or are expected to appear in this court for Chief John Doughty are:

Eichhorn & Eichhorn, LLP

(3)     If the party or amicus is a corporation, please identify all its parent corporations, if any, and list any publicly held company that owns 10% or more of the party's or amicus' stock:

Not applicable

Date: September 19, 2022

Attorney's Signature: /s/ John M. McCrum
Attorney's Printed Name: John M. McCrum

Please indicate if you are Counsel of Record pursuant to Circuit Rule 3(d): Yes.

Address: Eichhorn & Eichhorn, LLP
2929 Carlson Drive, Suite 100
P.O. Box 2275
Hammond, IN 46323
219-931-0560 (Phone)
jmccrum@eichhorn-law.com

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-1550

| Short Caption: | Z.H. v. Officer Jamie Garcia, et al |
|---|---|

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosures information required by Fed. R. App. P. 26.1 by completing item #3):

Chief John Doughty

(2)     The names of all law firms whose partners or associates have appeared in the case (including proceedings in the district court or before an administrative agency) or are expected to appear in this court for Chief John Doughty are:

Eichhorn & Eichhorn, LLP

(3)     If the party or amicus is a corporation, please identify all its parent corporations, if any, and list any publicly held company that owns 10% or more of the party's or amicus' stock:

Not applicable


Date: September 19, 2022

Attorney's Signature: /s/ Ryan A. Cook
Attorney's Printed Name: Ryan A. Cook

Please indicate if you are Counsel of Record pursuant to Circuit Rule 3(d): No.

Address: Eichhorn & Eichhorn, LLP
2929 Carlson Drive, Suite 100
P.O. Box 2275
Hammond, IN 46323
219-931-0560 (Phone)
rcook@eichhorn-law.com

## TABLE OF CONTENTS

**Page**

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS** ...................................... i.-iii.

**TABLE OF CONTENTS** ........................................................................ iv.-v.

**TABLE OF AUTHORITIES** ................................................................. vi.-x.

**I.     JURISDICTIONAL STATEMENT** ...................................................... 1

**II.    STATEMENT OF THE ISSUES** ....................................................... 1

**III.   STATEMENT OF THE CASE** ........................................................ 3

      A.     Nature of the Case............................................................................3

      B.     Statement of the Facts......................................................................4

**IV.    STANDARD OF REVIEW** ............................................................. 6

**V.     SUMMARY OF THE ARGUMENT** ................................................. 7

**VI.    ARGUMENT** ................................................................................ 8

      A.     Z.H.'s allegations fail to state a substantive due process violation under the Fourteenth Amendment............................................................ 8

      B.     Z.H. has failed to plausibly state a claim against Garcia for a violation of the Equal Protection Clause, and she relinquished this claim in the district court ............................................................................ 21

      C.     Garcia is entitled to qualified immunity ................................... 24

      D.     The District Court correctly dismissed Z.H.'s claim against Chief Doughty given her failure to plausibly allege that he was personally involved in any alleged deprivation of her constitutional rights ......... 27

      E.     There are no alleged facts to show that Doughty caused or participated in any violation of the Equal Protection Clause ................................... 33

      F.     The District Court appropriately dismissed Z.H.'s complaint with prejudice ...................................................................................... 34

**VII.   CONCLUSION** .......................................................................... 36

**CERTIFICATE OF COMPLIANCE**........................................................... 37

**SUPPLEMENTAL APPENDIX**............................................................. 38

**CERTIFICATE OF SERVICE** ............................................................. 41

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Abeyta by and through Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253 (10th Cir. 1996) ................................................................. 19

*Alexander v. DeAngelo*, 329 F.3d 912 (7th Cir. 2003) .................................... 11, 13, 26

*Anderson v. Cornejo*, 1999 WL 35307 (N.D.Ill. Jan. 11, 1999) ................................. 15

*Archie v. City of Racine*, 847 F.2d 1211 (7th Cir. 1988) ................................. 9

*Archer v. Chisholm*, 870 F.3d 603 (7th Cir. 2017) ................................. 25, 26

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .......................................... 7, 22, 23, 24, 32, 33

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 7, 32

*Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996) .................................... 12, 15

*Bohen v. City of E. Chicago, Ind.*, 799 F.2d 1180 (7th Cir. 1986) ............................. 23

*Bonnstetter v. City of Chicago*, 811 F.3d 969 (7th Cir. 2016) ....................................7

*C. C. ex rel Andrews v. Monroe Cty, Bd. of Educ.,* 427 F. App'x 781 (11th Cir. 2011) ................................................................................................. 25

*Chi. Studio Rental, Inc. v. Ill. Dep't of Com.*, 940 F.3d 971 (7th Cir. 2019)... 7 , 22, 23

*Chavez v. Ill. State Police*, 251 F.3d 612 (7th Cir. 2001) ........................................... 30

*Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992) ...................................... 9

*Cox v. Evansville Police Dept.*, 107 N.E.3d 453 (Ind. 2018) ..................................... 18

*Crespo v. Colvin*, 824 F.3d 667 (7th Cir. 2106) .................................... 22, 27

*Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) ......................................... 9, 10, 21

*Cygnar v. City of Chi.*, 865 F.2d 827 (7th Cir. 1989) .................................. 28

*Daniels v. Williams*, 474 U.S. 327 (1986) ....................................... 8, 9, 21

*Davis v. Carter*, 555 F.3d 979 (11th Cir. 2009) ........................................................... 20

*Decker v. Tinnel*, 2005 WL 3501705 (N.D.Ind. Dec. 20, 2005) .......... 10, 11, 14, 15, 17

*Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887 (7th Cir. 2012) ................................. 23

*Deshaney v. Winnebago Cty. Dept. of Soc. Servs.*, 489 U.S. 189 (1989) ............. 19, 20

*Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507 (7th Cir. 2020) .................................... 6

*Doe v. Perkins*, 2020 WL 5632931 (N.D.Ala. Sept. 21, 2020) .................................... 19

*Doe v. Smith*, 470 F.3d 331 (7th Cir. 2006) .................................................................. 13

*Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994) ...................................... 12

*Doxtator v. O'Brien*, 39 F.4th 852 (7th Cir. 2022) ........................................................ 20

*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009) ....................................... 13

*Fontana v. Haskin*, 262 F.3d 871 (9th Cir. 2001) .................................................... 16, 17

*Fosnight v. Jones*, 41 F.4th 916 (7th Cir. 2022) ....................................... 24, 25, 35, 36

*Geinosky v. City of Chi.,* 675 F.3d 743 (7th Cir. 2012) ................................... 23, 27, 31

*Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017) ............................................. 25

*Gossmeyer v. McDonald*, 128 F.3d 481 (7th Cir. 1997) ............................................. 30

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ................................................................. 24

*Hicks v. Moore*, 422 F.3d 1246 (11th Cir. 2005) ......................................................... 16

*Hoffmann v. Knoebel*, 894 F.3d 836 (7th Cir. 2018) ................................................... 30

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930 (7th Cir. 2012) .......... 35

*Ingraham v. Wright,* 430 U.S. 651 (1977) .................................................................... 10

*Jones by Jones v. Webb*, 45 F.3d 178 (7th Cir. 1995) .................................................. 26

*Jones v. City of Chi.,* 856 F.2d 985 (7th Cir. 1988) ................................... 28, 29, 30, 32

*Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997) .................................................... 13, 15

*Kane v. Barger*, 902 F.3d 185 (3rd Cir. 2018) ............................................. 15, 16, 17

*Katz-Crank v. Heskett*, 843 F.3d 641 (7th Cir. 2016) .................................................... 9

*Kernats v. O'Sullivan*, 35 F.3d 1171 (7th Cir. 1994) ................................................... 30

*King ex rel. King v. East St. Louis School Dist. 189*, 496 F.3d 812 (7th Cir. 2007) ... 10

*King v. Linemann*, 2011 WL 833977, (S.D.Ill. Mar. 4, 2011) ............................. 11, 14

*Kuhn v. Goodlow*, 678 F.3d 552 (7th Cir. 2012) .................................................... 29, 30

*LaBella Winnetka, Inc. v. Vill. of Winnetka*,
    628 F.3d 937 (7th Cir. 2010) ............................................................ 21, 22, 23, 24

*Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467 (7th Cir. 1997) ........................ 29

*Lenard v. Argento*, 699 F.2d 874 (7th Cir. 1983) ................................................... 29

*Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716 (6th Cir. 1996) ............................... 19

*Locke v. Haessig*, 788 F.3d 662 (7th Cir. 2015) ........................................................ 34

*McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011) ........................................ 7

*Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) ) ........................................................ 25

*Nagle v. McKernan*, 2007 WL 2903179 (N.D.Ill. Sept. 28, 2007) ................. 14, 15, 17

*Papasan v. Allain*, 478 U.S. 265 (1986) ........................................................ 7

*Park v. Stake*, 2021 WL 2333625 (C.D.Ill. June 8, 2021) ......................................... 10

*Paul v. Davis*, 424 U.S. 693 (1976) ........................................................ 9

*Perez v. Fajardo*, 257 F.Supp.2d 467 (D.P.R. 2003) .................................................. 33

*Petrovic v. City of Chicago*, 2010 WL 1325709 (N.D.Ill. Mar. 30, 2010) ............ 28, 29

*Roberts v. McLean County State's Attorney's Office*, 2020 WL 1957903, (C.D.Ill. Apr. 23, 2020) ............................................................ 10, 14

*Robinson v. Leonard-Dent*, 2013 WL 5701067 (N.D.Ind. Oct. 13, 2013) ........... 14, 15

*Rochin v. California*, 342 U.S. 165 (1952) ................................................................ 10

*Rogers v. City of Little Rock*, 152 F.3d 790 (8th Cir. 1998) ........................................ 13

*Romero v. City of Clanton*, 220 F.Supp.2d 1313 (M.D.Ala. 2002) ...................... 32, 33

*Salazar v. City of Chicago*, 940 F.2d 233 (7th Cir. 1991) ........................................... 9

*Siegert v. Gilley*, 500 U.S. 226 (1991) ..................................................................... 25

*Soderbeck v. Barnett County*, 752 F.2d 285, 293 (7th Cir. 1985) .............................. 29

*Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720 (3rd Cir. 1989) ................. 12, 15

*Szany v. Garcia, et al.*, 2020 WL 2767356 (N.D.Ind. May 28, 2020) .............. 6, 31, 32

*Trautvetter v. Quick,* 916 F.2d 1140 (7th Cir.1990) .................................................. 24

*Trentadue v. Redmon*, 619 F.3d 648 (7th Cir. 2010) ................................................. 29

*Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000) .................................................. 23

*White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548 (2017) ................................................. 25

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012) .......................................... 30

*Wilson v. Warren Cty., Ill.*, 830 F.3d 464 (7th Cir. 2016) ......................................... 20

*Wolf-Lillie v. Sonquist*, 699 F.2d 864 (7th Cir. 1983) ............................................... 28

*Wudtke v. Davel*, 128 F.3d 1057 (7th Cir. 1997) ............................................ 10, 11, 12

*Yeftich v. Navistar, Inc.*, 722 F.3d 911 (7th Cir. 2013) ............................................ 28

## **Constitution Sections**

U.S. Const. Amend. IV ...................................................................................... 1, 8, 9

U.S. Const. Amend. XIV, § 1 .......................................................... 1, 2, 8, 19, 23, 28

## **Statutes**

28 U.S.C. § 1291 ................................................................. 1

28 U.S.C. § 1331 ................................................................. 1

42 U.S.C. § 1983 ................................................... 1, 13, 14, 33, 34

## **Rules**

Fed.R.Civ.P. 8(a)(2) ........................................................... 7

Fed.R.Civ.P. 12(b) ............................................................ 35

Fed.R.Civ.P. 15(a)(1) ......................................................... 35

Fed.R.Civ.P. 15(a)(2) ......................................................... 35

## I.    JURISDICTIONAL STATEMENT

The jurisdictional statement in Z.H.'s brief is incomplete and incorrect.  The district court had subject matter jurisdiction of this action under 28 U.S.C. § 1331 because the complaint alleged violations of 42 U.S.C. § 1983 and the Fourth[1] and Fourteenth Amendments to the U.S. Constitution. The Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291.  Plaintiff appeals from an order of the district court dated March 21, 2022 granting defendants' respective motions to dismiss and dismissing with prejudice all claims against them [Appx., pp. 35-49],[2] and from a judgment of dismissal with prejudice entered on March 23, 2022. [Suppl. App., p. 1.][3]  No motion to alter the judgment was filed.  Plaintiff filed her notice of appeal on April 5, 2022. [App., p. 60].

## II.    STATEMENT OF THE ISSUES

Z.H.'s first three issue statements are redundant and each only partially states the true issue, which is: Whether the district court properly dismissed Z.H.'s complaint (alleging that defendant Garcia violated her Fourteenth Amendment substantive due process right to bodily integrity) when the facts pleaded, even if true, do not lead to any reasonable conclusion that Garcia's alleged conduct shocks the

---

[1] Z.H. withdrew her Fourth Amendment claim. [App., p. 35, n.1 (citing DE 21, p. 10)].

[2] Z.H. did not number the pages in her short appendix. Citations to documents in her appendix appear as "App.," followed by the page number of the PDF document. Citations to other documents filed in the district court that are not part of Z.H.'s appendix are cited by their district court docket entry number, followed by the page number(s) within that docket entry. For example, "[DE 10, p. 7]" refers to page 7 of Chief Doughty's brief in support of his motion to dismiss.

[3] Z.H. did not provide the district court's judgment in her appendix. Appellees have included it in their supplemental appendix.

conscience.

Z.H.'s fourth issue statement regarding qualified immunity is incomplete. The district court determined that given her failure to show that Garcia violated a constitutional right, it did not need to consider Garcia's qualified immunity defense, to-wit, whether the right was clearly established. [App., p. 47, n.6]. Although the district court did not consider this defense, the issue is: Whether Garcia is entitled to qualified immunity when Z.H. has failed to plead facts that demonstrate any violation clearly established in the case law of her right to bodily integrity.

Z.H.'s fifth issue statement is incorrect. The issue is: Whether the district court properly dismissed plaintiff's complaint against Chief Doughty when she failed to plead a plausible substantive due process claim against Garcia and failed to allege facts to show that Doughty was personally involved in Garcia's allegedly unconstitutional conduct.

Z.H.'s sixth issue statement is incomplete. The principal issue is not only whether she pleaded sufficiently an equal protection violation under the Fourteenth Amendment but also whether she waived the claim by making a perfunctory, two-sentence argument on the subject in her response brief filed with the district court.

Z.H.'s seventh issue statement is likewise incomplete and misstates the issue, which is: Whether the district court properly exercised its discretion to dismiss Z.H.'s claims with prejudice when Z.H. did not request leave to amend her complaint and gave no indication that she could cure the defects in her complaint.

## III.  STATEMENT OF THE CASE

*A.  Nature of the Case*

This case is before the Court on Z.H.'s appeal [App., p. 60] from the district court's order granting the defendants' motions to dismiss with prejudice.  [App., pp. 35-49].  Z.H. filed a complaint alleging that Garcia violated her Fourteenth Amendment substantive due process right to bodily integrity by his conduct during a police ride-along.  [App., pp. 51-54].  She alleged that defendant Doughty was liable because he purportedly acted with "deliberate indifference" in his "supervision, training and continued employment" of Garcia as an officer in the Hammond Police Department.  [App., p. 55, ¶¶ 38-39].

The district court held that the conduct Z.H. ascribes to Garcia did not rise to the level of a conscience-shocking violation of her constitutional right to bodily integrity.  [App., pp. 41-46].  Although it may have "implicated state law considerations," the limited scope of the Fourteenth Amendment "does not encompass Z.H.'s grievance" since the touching alleged was not a "[v]ery serious batter[y], such as rape [or] egregious sexual conduct."  [App., pp. 36, 42].  It did not involve coerced sexual activity, escalating over weeks, or the illicit photographing of naked genitalia on a personal electronic device for self-gratification, or multiple encounters, or threatened adverse official action, the removal of clothing, the exposure of breasts or genitalia, the use of force, or the use of a weapon or any other threat, which might meet the threshold of a substantive due process violation.  [App., pp. 42-44].  And Z.H.'s age and status at the time—a 17 year-old taking college classes—does not

3

change the analysis, because age alone cannot convert her non-constitutional claim into a constitutional one. [App., pp. 44-45].

Z.H. also alleged that Garcia's alleged acts violated the Equal Protection Clause. [App., p. 55, ¶ 35]. But her single conclusory allegation failed to state a plausible claim of intentional discrimination under the Equal Protection Clause; and the district court determined that the perfunctory two-sentence argument in her response brief essentially waived the issue. [App., p. 47; DE 21, p. 11].

Finally, as to Z.H.'s claims against Chief Doughty, the district court held that having failed to plead a viable constitutional claim against Garcia, she failed to state any viable claim against Doughty; and the court further held that Z.H. had failed to allege facts showing that Doughty was personally involved in the alleged conduct, and thus could not be personally liable under 42 U.S.C. § 1983. [App., pp. 47-48].

The clerk entered judgment against Z.H. with prejudice on March 23, 2022. [Supp. App., p. 1]. Z.H. filed her notice of appeal on April 4, 2022. [Supp. App., p. 2; *cf.* App., p. 60].[4]

### B.     *Statement of the Facts*

At the time of the alleged incident, Z.H. was a 17-year old student apparently enrolled in a course at Ancilla College[5] in Plymouth, Indiana. [App., p. 52, ¶¶9-10]. Her studies required that she participate in a "ride-along" with a police officer. [*Id.*,

---

[4] The notice of appeal Z.H. included in her appendix [App., p. 60] does not appear to be the notice of appeal filed in the district court. [Suppl. App., p. 2; DE 25.]

[5] Ancilla College became part of Marian University in July 2021: https://www.marian.edu/ ancilla/about-ancilla-college-of-marian-university/history.

¶9]. Z.H. knew Garcia, who was a Hammond Police Officer. [*Id*.]. The Hammond Police Department ("HPD") had a policy prohibiting minors from going on a ride-along [App, p. 53, ¶ 13], but Z.H. does not allege that Garcia, Doughty, or any decision-maker at HPD were informed of her age. [App., pp. 51-58, generally]. Garcia arranged to drive his personal vehicle to Ancilla College to pick up Z.H., after which he drove her to HPD for the start of his patrol shift. [App., p. 52, ¶ 10]. Z.H. does not allege any untoward behavior by Garcia during the ride from Plymouth to Hammond, and does not state how she returned home after the ride-along. [*Id*.].

Garcia gave Z.H. a tour of HPD and introduced her to several police officers, but Z.H. does not claim to have been introduced to Chief Doughty. [App., p. 53, ¶¶ 11-12]. Afterward, Garcia prepared for his shift by placing guns in the police vehicle. [*Id*., ¶ 14]. Once in the patrol car, Z.H. fastened her seat belt and Garcia adjusted it, rubbing his arm against her breast. [*Id*., ¶¶ 15-16]. Later, they were both in the cashier line at a gas station when Garcia placed his hand on her buttock without consent. [*Id*., ¶¶18-19].

During the ride-along, Garcia at times put his hand on Z.H.'s leg, also without her consent. [*Id*., ¶20]. That evening he and other officers made an arrest [*Id*., ¶21]. Garcia then drove to a secluded area where he spoke to an unknown Hammond officer from their patrol cars with their windows down and Garcia asked the other officer more than once whether he wanted to have sex with Z.H. [App., p. 54, ¶¶22-25]. Z.H. was scared and offended, but she does not allege that she asked Garcia to end the ride-along. [*Id*., ¶ 24].

5

The ride-along continued. Garcia told Z.H. that he was going to locate a prostitute and did so, after which he told the prostitute that Z.H. wanted to do what she was doing. [*Id.*, ¶¶ 26-27]. At some point during the evening, Garcia asked Z.H. questions about her dating and sex life. [*Id.*, ¶ 28]. Z.H. does not allege how or when the ride-along ended, how she arrived back at Ancilla College or—assuming Garcia drove her back in his personal vehicle—what was said or done during the drive back. [App., pp. 51-58, generally].

Thereafter, one of Z.H.'s classmates went on a ride-along with Garcia. [App., p. 54, ¶ 29]. The classmate asked Z.H. whether Garcia had acted inappropriately, and they reported their interactions with him to a teacher who notified the HPD. [*Id.*, ¶¶ 30-3]. Z.H. alleges that, prior to the ride-alongs, Chief Doughty knew about alleged "inappropriate behavior" by Garcia with females, referring to a lawsuit alleging sexual misconduct.[6] [*Id.*, ¶¶ 32-33]. But Z.H. does *not* allege that Doughty knew or approved of Z.H.'s ride-along with Garcia prior to or during the ride-along, or that Doughty knew or approved of Garcia's alleged conduct during the ride-along. [App., pp. 51-58, generally].

## IV.    STANDARD OF REVIEW

The Court reviews *de novo* a district court order granting a motion to dismiss under Rule 12(b)(6). *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 512 (7th Cir.

---

[6] The lawsuit, *Szany v. Garcia, et al.*, 2020 WL 2767356 (N.D.Ind. May 28, 2020), was brought by another HPD officer against Garcia and the City of Hammond alleging, *inter alia*, a single incident of workplace sexual harassment occurring in 2016. The district court granted summary judgment to the City of Hammond (and dismissed Szany's claims against Garcia on jurisdictional grounds), concluding that the evidence did "not add up to a meritorious federal claim." *Id.* at *20. (Case No. 2:17-cv-00074-PPS-JPK)

2020).  The Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party.  *Bonnstetter v. City of Chi.*, 811 F.3d 969, 973 (7th Cir. 2016).  But the court is not bound "to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986); and "legal conclusions and conclusory allegations that merely recite the elements of the claim are not entitled to this presumption of truth."  *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (*citing Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009)).  The plaintiff must allege specific facts that "possess enough heft" to plausibly show an entitlement to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

While Fed.R.Civ.P. 8(a)(2) requires the plaintiff to make "a short and plain statement of the claim showing that the pleader is entitled to relief," "short and plain" does not relieve the pleader of the obligation to provide "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570 (plaintiff must nudge her claims across the line from "conceivable" to "plausible").  The allegations "must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Chicago Studio Rental, Inc. v. Ill. Dep't of Com.*, 940 F.3d 971, 977 (7th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).

## V.    <u>SUMMARY OF THE ARGUMENT</u>

To plausibly state a claim based on a substantive due process violation, Z.H. must allege facts showing a serious invasion of her bodily integrity—facts sufficient

to shock the judicial conscience. Such facts arise from forcible or deceptive, and often violent and coerced, sexual acts equating to rape. Z.H. has alleged no facts rising to this level of unconstitutional intrusion and, therefore, her complaint was properly dismissed. Her claim of an equal protection violation under the Fourteenth Amendment was likewise properly dismissed, inasmuch as she failed to allege how another class of individuals was treated disparately from and more favorably than her under the same or similar circumstances or that defendants intended to harass her because of her status as a female.

Finally, and quite apart from any *Monell* considerations, Z.H.'s complaint failed to plausibly allege facts imputing any liability to Chief Doughty, who was sued individually and not in an official capacity. Given her failure to plead facts to establish a viable constitutional claim against Garcia, and given further her failure to plausibly allege facts to show that Doughty knew of and approved the ride-along before or at the time it occurred—or that he was otherwise personally involved in the incident—her complaint against him was properly dismissed.

## VI. <u>ARGUMENT</u>

### A. Z.H.'s allegations fail to state a substantive due process violation under the Fourteenth Amendment.

The Fourteenth Amendment's Due Process Clause forbids a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. It protects against the exercise of "certain government actions regardless of the fairness of the procedures used" in order to "prevent [such] power from being 'used for purposes of oppression.'" *Daniels v. Williams*, 474 U.S.

327, 331-32 (1986)(citations omitted).  But "[o]nly the most egregious official conduct" is "arbitrary in the constitutional sense."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992)).

Although the Constitution is addressed to the "large concerns" of the people and their governors, it does not "purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society[,]" *Daniels*, 474 U.S. at 332; *see Archie v. City of Racine*, 847 F.2d 1211, 1220 (7th Cir. 1988) (en banc).  Nor was the Fourteenth Amendment designed to serve as a "font of tort law" to be superimposed on the tort law systems of the States.  *Id.* (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)); *see Lewis*, 523 U.S. at 848; *see also Katz-Crank v. Heskett*, 843 F.3d 641, 649-50 (7th Cir. 2016).

Thus, an actionable claim based on a substantive due process violation under the Fourteenth Amendment requires that the plaintiff show an "affirmative abuse of power"—that is, a "deliberate decision[] of [a] government official[] to deprive a person" of that right.  *Daniels*, 474 U.S. at 330-31.  To that end, only intentional or criminally reckless conduct will implicate the Due Process Clause, criminal recklessness being that behavior which demonstrates a "complete indifference to risk," that is, reflecting such utter disregard for human life that the "actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death."  *Salazar v. City of Chi.*, 940 F.2d 233, 238 (7th Cir. 1991); *Archie*, 847 F.2d at 1219.  It is not the stuff of boorish flirtation or sexually suggestive behavior but, rather, official conduct intended to deliberately injure someone.  *See id.* at 1218.

9

The historic liberty interests implicated by the Due Process Clause include freedom from "unjustified intrusions on personal security," or infringement on the right to bodily integrity. *Ingraham v. Wright*, 430 U.S. 651, 673 (1977); *see also Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997). To state a claim on the basis of bodily integrity, the plaintiff must allege an "executive abuse of power" that "shocks the conscience." *Lewis*, 523 U.S. at 846 (citing *Rochin v. California*, 342 U.S. 165, 172-73 (1952)). In that regard, the judicial conscience is shocked only if the conduct does more than "offend some fastidious squeamishness or private sentimentalism ...." *Rochin*, 342 U.S. at 172 (officers' forced extraction of individual's stomach contents to retrieve ingested drug sufficient to "shock the conscience"). "Shock-the-conscience" behavior is that which "offend[s] even hardened sensibilities," and is unquestionably "brutal" and "offensive to human dignity." *Id.* at 172-74.

Only conduct at the "more culpable end" of the spectrum of tort law "shall be found to shock the conscience." *King ex rel. King v. East St. Louis School Dist. 189*, 496 F.3d 812, 818-19 (7th Cir. 2007)(citing *Lewis*, 523 U.S. at 849). In the context of sexual misconduct claims, a single touching of the buttocks, or momentary contact with a female's breast or legs—even if intended—does not suffice. *See, e.g., Decker v. Tinnel*, 2005 WL 3501705, at *1-2, *8-9 (N.D.Ind. Dec. 20, 2005); *see also Park v. Stake*, 2021 WL 2333625, at *4 (C.D.Ill. June 8, 2021). Rather, "sexual misconduct cases which shock the judicial conscience 'deal with repeated misconduct by a state actor over time that involves the exercise of force and reaches, or closely approaches the level of rape.'" *Roberts v. McLean County State's Attorney's Office*, 2020 WL

1957903, at *7 (C.D.Ill. Apr. 23, 2020)(quoting *King v. Lienemann*, 2011 WL 833977, at *4 (S.D.Ill. Mar. 4, 2011))(citing *Wudtke*, 128 F.3d at 1064 and *Alexander v. DeAngelo*, 329 F.3d 912, 916-17 (7th Cir. 2003)).

Even if proven true, Z.H.'s allegations against Garcia would not constitute outrageous conduct in violation of the Due Process Clause. She alludes to brief, unconsented-to touching of her person and ascribes to Garcia crude remarks about sex and prostitution. [App. p. 54, ¶¶24-28]. But sexual remarks do not invade bodily integrity; and, at most, the physical contact she has alleged equates to common law battery claims. *See Decker v. Tinnel*, *supra*. A review of the case law from this Circuit and its sister courts proves this to be so.

Beginning at the "more culpable end of the spectrum," the Court in *Wudtke* decided that a teacher stated a claim for violation of her right to bodily integrity when she alleged that a school district superintendent engaged in a campaign of sexual harassment toward her over several months—culminating in compelled oral sex on three occasions. 128 F.3d at 1059, 1063. According to Ms. Wudtke, the superintendent forced her to have oral sex by threatening (a) to deny her a classroom aide to help with her workload; (b) to prevent the school district from hiring her husband; and (c) to withhold approval of the renewal of her special education license, which would result in her losing her job. *Id.* at 1059. The Court concluded that the superintendent's alleged acts were an "extreme and outrageous violation of [Wudtke's] person," and "far more than negligence or an ordinary state tort claim." *Id.* at 1063-64.

The *Wudtke* Court considered cases from other circuits in which the courts found viable substantive due process claims based on invasions of bodily integrity. Each is marked by a pattern of escalating threats, coercion, and intimidation not alleged in Z.H.'s complaint. In *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720 (3rd Cir. 1989), a band director allegedly used "physical force, threats of reprisal, intimidation and coercion" to force a female student to engage in various sexual acts during her sophomore through senior years in high school (and for two years thereafter). *Id.* at 722. In *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994) (en banc), a biology teacher repeatedly behaved inappropriately toward female students, then seduced and repeatedly had sexual intercourse with a female student during her freshman and sophomore years. *Id.* at 446-49. The court held that the student stated an "incontrovertible" claim for violation of her right to bodily integrity due to the teacher's sexual fondling of her and commission of statutory rape. *Id.* at 451-52.

Similarly, in *Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996), a sheriff investigating a woman who shot her husband following a domestic dispute, learned that the husband would not be released from the hospital that evening. He went to the woman's home and questioned her about the shooting incident, then left the home but allegedly returned and raped her. According to the woman, the sheriff responded to her objections to sexual intercourse by telling her that he was the sheriff and could do as he pleased, including having her thrown in jail. *Id.* at 583-84.

Based on the case law established in this and other circuits, the pivotal element of a substantive due process claim based on invasion of bodily integrity is compelling a sex act. *See, e.g., Alexander*, 329 F.3d at 916 ("Rape … is not only a battery, but a very serious battery, and a rape committed under color of state law is therefore actionable under 42 U.S.C. § 1983 as a deprivation of liberty without due process of law.")(citations omitted);[7] *see also Doe v. Smith*, 470 F.3d 331, 334-36, 348 (7th Cir. 2006) (reversing summary judgment for dean of students on § 1983 claim where dean repeatedly performed oral sex on middle school student), *abrogated on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997)(district court properly instructed jury on right to bodily integrity where officer raped woman); *Rogers v. City of Little Rock*, 152 F.3d 790, 795-96 (8th Cir. 1998)(officer stopped woman for broken tail light then followed her home and raped her).

The violent, physically intrusive, and coercive nature of these alleged acts are plainly distinguishable from the fleeting physical contact Z.H. asserts in this action. Less intrusive conduct, even if "offensive and despicable" falls short of the mark. As the Court observed in *Alexander*, bodily integrity "is infringed by a serious, as distinct from a nominal or trivial, battery" and "most batteries are too trivial to amount to a deprivation of liberty." 329 F.3d at 916. This does not make them trivial as batteries,

---

[7] In *Alexander*, the female plaintiff claimed she performed oral sex on a police officer (allegedly the target of a "sting" operation) when another officer threatened her with 40 years in prison on a cocaine charge if she did not comply. Both *Wudtke* and *Alexander* involved "sex procured by threats … a common form of rape," and therefore serious enough to state a substantive due process claim. 329 F.3d at 916.

but it does make them too inconsequential to become substantive due process violations actionable under 42 U.S.C. § 1983. *See Robinson v. Leonard-Dent*, 2013 WL 5701067, at *8 (N.D.Ind. Oct. 18, 2013)("Dent's fairly run-of-the-mill sexual harassment [allegations] fall on the side of being too trivial to amount to a deprivation of liberty for constitutional purposes."); *see also Nagle v. McKernan*, 2007 WL 2903179, at *1-2 (N.D.Ill. Sept. 28, 2007)(no substantive due process violation found where fire marshal allegedly cornered a woman at her workplace during a routine inspection, gave her a love note, leaned against her body, and inhaled and exhaled while "intimately press[ing] his face against the back of [her] head and neck."); *King v. Lienemann*, 2011 WL 833977, at *4 (S.D.Ill. Mar. 4, 2011)(finding no substantive due process violation where "on one occasion, [the defendant correctional officer] pulled down his, [the plaintiff's] pants and underwear, seemingly without the use of force."); *Roberts*, 2020 WL 1957903, at *1 (no substantive due process violation where supervisor engaged in discussions about sex, grabbed plaintiff's arm, and attempted a kiss).

Z.H.'s allegations against Garcia do not include any coerced sexual acts or any threats of adverse police action absent her compliance. According to her, he rubbed his arm against her breast (as he sought to adjust her seat belt), touched her leg, and touched her buttocks on one occasion. There is no allegation that he propositioned her. He did not put his hands underneath her clothing or attempt to remove them. Taken as a whole, Garcia's alleged actions do not even reach the level of the officer in *Decker v Tinnel*, *supra*, which involved another "ride-along" plaintiff.

In *Decker*, an 18 year-old woman went on a ride-along with officer Tinnel. Tinnel repeatedly asked Decker if she would strip for him, but she said no. 2005 WL 3501705, at *1. Tinnel attempted to kiss her and tried to "stick his tongue down her throat," but she resisted. *Id*. He forced his hand between her closed thighs within an inch of her vagina. *Id*. Decker yelled "No" at Tinnel. *Id*. He tried to kiss her again and placed his whole hand on her breasts over her t-shirt but stopped when she again yelled "No." *Id.* at *2. She asked Tinnel to drive her home, and he did so. *Id*.

The court concluded that the officer's conduct did not amount to a constitutional violation because the touching stopped when Decker said "No," and the officer did not try to further his attempts by force or compulsion, in marked contrast to the "egregious physical assault" of forcible rapes and coerced sexual intercourse in *Jones*, *Bennett*, and *Stoneking*. *Id.* at *8-9; *see also Anderson v. Cornejo*, 1999 WL 35307, at *5 (N.D.Ill. Jan. 11, 1999) (dismissing substantive due process count alleging aggressive pat-down and invasive strip searches, noting that "no case has been found that holds that an assault short of sexual assault or physical assault causing substantial injury is a violation of substantive due process"). There is no indication that Z.H. told Garcia to stop his remarks or occasional physical touch.

Like *Decker*, *Nagle*, and *Robinson*, Z.H.'s allegations against Garcia lie on the lower end of the spectrum of common law tort claims. The alleged contact was brief and occurred on a single occasion. There are no facts to suggest that she was coerced into having sex with him or that she was lured, or deceived, into exposing herself. In this regard, her reliance on *Kane v. Barger*, 902 F.3d 185 (3rd Cir. 2018) is misplaced

15

and readily distinguishable from the facts alleged here. [Z.H. Brief, p. 12; App, pp. 42-43]. In *Kane*, plaintiff was the victim of a sexual assault. During the investigation that followed, an officer met with her alone in a back room of the police station. He photographed her breasts and buttocks with his cell phone (even though official photographs had already been taken to document her injuries); he repeatedly asked plaintiff about her breasts, vagina, and buttocks; he pulled down her pants and touched the cleft of her buttocks; and he coerced her into exposing her vagina to him (which he possibly photographed) despite her repeated denials of a vaginal injury. *Id.* at 188-90, 193.

The *Kane* court concluded that the officer acted for personal gratification rather than investigative ends and held that such behavior "shock[ed] the conscience and violated Kane's right to bodily integrity. *Id.* at 188. The officer, charged with assisting a sexual assault victim, intensified her distress by deceptively invading her bodily privacy. Such conduct, however, is a far cry from the crude remarks and fleeting, over-the-clothes contact Z.H. alleges in her complaint.

Z.H. also relies heavily on a Ninth Circuit opinion, *Fontana v. Haskin*, 262 F.3d 871 (9th Cir. 2001) [Z.H. Brief, pp. 13-14], but that case is distinguishable and unavailing. *Fontana* is a Fourth Amendment seizure case. *Id.* at 881-82;[8] *but see id.* at 882, n.7. In that case, plaintiff was a disoriented and intoxicated car crash victim arrested by California after she failed a field sobriety test. *Id.* at 875, 880. She was

---

[8] The court, therefore, applied a "reasonableness" standard, not a "deliberate indifference" or "shocks the conscience" standard. *Id.*; *see also Hicks v. Moore*, 422 F.3d 1246, 1253, n.7 (11th Cir. 2005)(noting Fourth Amendment standard is "commonly an easier standard for a plaintiff to meet").

driven in handcuffs from the scene by one officer while another patrol officer, Barger, sat next to her in the back seat, massaging her shoulders, telling her she had "nice legs" and the "perfect body," and that he could be her "older man." *Id.* at 880. The plaintiff asked him to stop but Barger persisted, even after they arrived at the police station. *Id.* He continued to make sexually suggestive comments, asking her if she had a boyfriend, and wanting to know where she lived. *Id.*

Unlike Z.H., Fontana was under restraint, disoriented, and actively and futilely resisting the officer's advances while under arrest and being transported to jail. Like the officer in *Kane*, Barger's conduct falls at the more culpable end of the spectrum because he allegedly preyed upon an arrested crash victim who was neither mentally or physically able to defend herself.

By contrast, Z.H. voluntarily placed herself in Garcia's patrol car. There is no indication that she was mentally or physically impaired. In order to facilitate the ride-along she requested, Garcia drove to Ancilla College in his private vehicle to pick her up before the start of his shift. [App., p. 52, ¶¶9-10]. Garcia drove the vehicle throughout the ride-along (not tucked away in the backseat making sexual advances while being driven by another officer). Unlike Fontana, Z.H. was never handcuffed or otherwise physically restrained. Unlike Fontana, Z.H. does not allege that she ever asked Garcia to stop anything he said or did. And, unlike Fontana, Z.H.'s liberty interest was never substantively compromised. *See, e.g., Decker, supra* (Northern District of Indiana case from 2005) and *Nagle, supra* (Northern District of Illinois case from 2007).

17

Lacking precedent to support her claim of any substantive due process violation, Z.H. resorts to polemics and hyperbole. [Z.H. Brief, pp. 8-10]. Among other things, she claims that until recently women *in the workplace* had "little protection or recourse" against sexual advances. [*Id.*, p. 9]. But Z.H. was not an employee in the workplace and hers is not an employment discrimination suit.  And, she did have legal recourse—she could have filed a common law battery claim against Garcia and Hammond in state court, *see, e.g., Cox v. Evansville Police Dept.*, 107 N.E.3d 453, 464-65 (Ind. 2018); however, she chose not to do so.

In her brief, Z.H. asserts that she was "a high school student" and likens the ride-along to a class trip or "high school project."  [Z.H. Brief, pp. 10-12].  In her complaint, however, she did not allege that she was a high school student undertaking a class project—rather, she alleged simply that she was a "student;" that her "studies" required her to participate in a ride-along with a police officer; and that Garcia picked her up at Ancilla College.  [App., p. 52, ¶¶9-10]. Even construing reasonable inferences in her favor, it is evident that Z.H. was taking a class— presumably, a criminal justice course—at Ancilla College, which is hardly surprising. There are doubtless many seventeen year-old students enrolled in college curricula.

Though she goes to some lengths to infantilize herself, being a student does not necessarily make the circumstances alleged any more favorable to Z.H.[9] As the district court correctly observed, age itself does not turn a state tort claim into a

---

[9] In her complaint, Z.H. refers to herself only as a "student."  [App., p. 54, ¶9].  She alleges that at the time of its filing, she was 19 years old and at the time of the occurrence she was 17 years old; however, she does not disclose her date of birth or how many weeks or months she was from the age of majority when the ride-along took place.  [*Id.*, p. 54, ¶¶4, 9-10].

constitutional violation.  [App, pp. 44-45].  *See Abeyta by and through Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253 (10th Cir. 1996)(holding no violation of substantive due process where teacher called sixth grade student a "prostitute" repeatedly for month and a half and allowed classmates to taunt her about being prostitute); *Doe ex rel. Doe v. Perkins*, 2020 WL 5632931, at *5-6 (N.D. Ala., Sept. 21, 2020)(high school freshman's age not factor in analysis of substantive due process claim against history teacher/coach).  In *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716 (6th Cir. 1996), the dismissal of students' substantive due process claims was affirmed when a high school teacher and soccer coach was verbally abusive toward one of them and stared at her, making kissing noises, and insulting her.  *Id*. at 719-20.  He rubbed her stomach in the hallway and told her "he had arranged permission for her to come to his class … after her last exam."  *Id.*

The court in *Lillard* held that the stomach-rubbing and sexually suggestive comment, while inappropriate and "deplorable," did not rise to the level of "brutal," "inhumane," or "outrageous" conduct that would shock the conscience. *Id.* at 726. Indeed, the court doubted that the challenged conduct, being "single" and "isolated" was severe enough to state a claim for sexual harassment under Title VII, let alone a substantive due process claim. *Id.*

Z.H. claims that Garcia had an "added obligation of protecting" her. [Z.H. Brief, pp.10]. But she cites no case law to support this wholly conclusory assertion. [*Id.*, pp.10-11]. To the contrary, in *Deshaney v. Winnebago Cty. Dept. of Soc. Servs.*, 489 U.S. 189 (1989), the Supreme Court held that the government has no duty under the

19

Due Process Clause to "guarantee certain minimal levels of safety and security" against the actions of private parties, and that it is only "when the State takes a person into its custody [*i.e.* incarcerates, apprehends, or involuntarily commits] and holds him there against his will, [that] the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 195-200.[10]

Z.H. was neither in Garcia's custody nor held against her will. Her complaint does not allege that Garcia (or any other governmental official) compelled her to undertake a ride-along with him. She apparently went on a ride-along with Garcia because she knew him. [App, p. 52, ¶ 9]. Z.H. does not allege that she asked him to end the ride-along and that he refused. Z.H. undertook and continued the ride-along with Garcia of her own will. Indeed, Z.H. withdrew her Fourth Amendment false imprisonment claim. [App., p. 35, n.1]. Thus, Garcia had no "added obligation of protecting" her under the Due Process Clause.

Z.H. asserts that the worst part of her experience during the ride-along was that Garcia purportedly took her to a secluded location where he talked to another officer. [Z.H. Brief, p. 11]. Z.H. claims that she was a "petite female," that Garcia

---

[10] The second aspect of the *DeShaney* holding has been interpreted to include a "limited" and "narrow" exception called the "state-created danger" exception, but that exception applies "*only* to situations in which the harm is perpetrated by *private actors*." *Doxtator v. O'Brien*, 39 F.4th 852, 866 (7th Cir. 2022) (citing *Wilson v. Warren Cty., Ill.*, 830 F.3d 464, 469 (7th Cir. 2016) ("Due Process does not require a state to protect citizens from *private acts* unless the state itself creates the danger") (emphases added). And neither compulsory attendance at school nor voluntary attendance at school-related events creates a custodial relationship. *Davis v. Carter*, 555 F.3d 979, 982, n.2 (11th Cir. 2009).

was a "very muscular man," and that there was "[n]o laughing[,] no humor" between the two officers [*Id.*], but these claims find no expression in her Complaint.  [App., p. 54, ¶¶22-25].   She describes Garcia as having the authority and "government conferred power to use force and to cause compliance."  [Z.H. Brief, p. 11].  But she never alleged that either officer made even the slightest attempt to use any such authority, force, or power.  Rather, her allegation is that the two officers talked to each other with their "window[s] down."  [App, p. 54, ¶ 24].  Clearly, the other officer made no physical contact with Z.H. whatsoever, never approached Z.H., and, indeed, never so much as exited his vehicle.

As discussed at the outset, the U.S. Constitution is addressed to the "large concerns" of the governed and the governors—it "does not purport to supplant traditional tort law …." *Daniels*, 474 U.S. at 332. The Due Process Clause may only be invoked in actions triggered by egregious official abuses of power that "shock the conscience." *Lewis*, 523 U.S. at 846. Z.H. has not alleged such a claim. Her remedy was under the common law of torts in state court, not under the U.S. Constitution.

**B.    Z.H. has failed to plausibly state a claim against Garcia for a violation of the Equal Protection Clause, and she relinquished this claim in the district court.**

The district court properly dismissed Z.H.'s claim of an equal protection violation.  [App., pp. 46-47.]  Z.H. failed to allege facts to show that Garcia intentionally treated her differently than others ("comparators") and that there was no rational basis for the difference in treatment. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010). The district court likewise properly

concluded that she had essentially "thrown in the towel" on her equal protection claim because her response brief contained a two-sentence, perfunctory argument devoid of any citation to precedent or legal analysis, citing *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived."). [App., p. 47].

In her brief to this Court, Z.H. has utterly failed to address the district court's conclusion that she relinquished her equal protection claim. [Z.H. Brief, pp. 20-22]. She has thus waived any argument that the district court erred on that point due to her "complete lack of development of [any] argument" to the contrary. *See Crespo*, 824 F.3d at 674.

Even had she not conceded the issue, Z.H.'s slender allegation about an equal protection violation is insufficient to state a claim for relief. [App., p. 55, ¶ 35]. It is by now fundamental that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Iqbal*, 556 U.S. at 678; *Chicago Studio Rental*, 940 F.3d at 978-79 (refusing to accept as true a one-sentence, conclusory statement in antitrust claim that transactional costs increased).

More critically, Z.H. is simply wrong on the law. She cites *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937 (7th Cir. 2010) for the proposition that she had "no duty or obligation to present a similarly situated person [or] comparator." [Z.H. Brief, p. 26]. But *LaBella*, a class-of-one case, stands for exactly the opposite proposition. "[T]o state[] a class-of-one equal protection claim," the Court held, a

plaintiff must allege that she "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* at 942 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).[11] The Court affirmed dismissal because "LaBella's claim [did] not satisfy the first element of that inquiry." *Id.* Unlike Z.H., the plaintiff in *LaBella* made allegations about three comparators, but the Court found that they were not similarly situated.[12] *Id.* at 941-43. Z.H.'s claim likewise fails because she alleged no facts that would plausibly show she was intentionally treated differently than a similarly situated comparator. *See Iqbal*, 550 U.S. at 570.

Z.H. also cites *Bohen v. City of E. Chicago, Ind.*, 799 F.2d 1180 (7th Cir. 1986), but the sexual harassment against Bohen—and other women—was repeated, perpetrated in part by her immediate supervisor, and so widespread and tolerated that even the fire chief warned Bohen during her interview of the abusive environment that female employees had to endure. *Id.* at 1182-83, 1187-88. A claim for sexual harassment under the Equal Protection Clause requires a plaintiff to show

---

[11] Z.H. refers to *Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887 (7th Cir. 2012) for the proposition that "[w]hether a showing of disparate treatment is needed … is an unresolved issue." [Z.H. Brief, pp. 21-22.] She is mistaken. In *Chicago Studio Rental*, the Court stated the same necessary elements as in *LaBella Winnetka* and then acknowledged that *Del Marcelle* did not resolve the issue of whether a plaintiff "must *also* prove bad motive." *Chicago Studio Rental*, 940 F.3d at 979-80 (emphasis added). In *Geinosky v. City of Chi.*, 675 F.3d 743, 745 (7th Cir. 2012), the plaintiff alleged harassment by officers from the same police unit who issued him 24 bogus and sometimes contradictory parking tickets, and the Court held that in a "straightforward official harassment case like the allegations here" the plaintiff was not required to "name a person not so severely harassed …." *Id.* at 746, 748, n.3. Z.H. has not alleged such an obvious claim of official harassment illegitimately targeted solely at her.

[12] Comparators are similarly situated if they are "identical or directly comparable in all material respects." *Id.* at 942.

"both 'sexual harassment' and an 'intent' to harass based upon that plaintiff's membership in a particular class of citizens—i.e. male or female." *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990). The intent to discriminate must be an "intent to discriminate *because of* her status as a female and not because of characteristics" that are personal to her. *Id.* at 1151-52 (emphasis in original) (affirming summary judgment for defendant due to no evidence he intended to harass plaintiff "simply because she was a woman").

Z.H. makes only the conclusory claim of an intentional discrimination. [Z.H. Brief, p. 22; App., p. 55, ¶ 35]. This "formulaic recitation … will not do," *Iqbal*, 556 U.S. at 687, because it does not state a plausible claim that either defendant intended to discriminate against her because she is female. To the extent Z.H. intends to state a class-of-one claim, she failed to allege any comparators, let alone any similarly situated comparators who were intentionally treated differently. [App., p. 47]. Z.H.'s claim failed to allege as much and did not satisfy the first element of the equal protection inquiry. *LaBella Winnetka*, 628 F.3d at 942. The district court's dismissal of Z.H.'s equal protection claim should be affirmed.

## C.    Garcia is entitled to qualified immunity.

Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages unless they "violate clearly established statutory or constitutional rights." *Fosnight v. Jones*, 41 F.4th 916, 924 (7th Cir. 2022) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The right must be so "sufficiently clear that every reasonable official would understand that

what he is doing violates that right." *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015)). A case directly on point is not required, but a "high level of generality" is not sufficient." *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 137 S.Ct. 548, 552 (2017)). An additional critical element is whether the right in issue "was clearly established at the time of the alleged violation." *Fosnight*, 41 F.4[th] at 924 (citing *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017)).

The district court did not reach the qualified immunity defense raised in Garcia's motion to dismiss, noting that a prerequisite to making such a determination is whether plaintiff has alleged a viable constitutional violation in the first place. [App., p. 47]. "A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.'" *C.C. ex rel. Andrews v. Monroe Cty. Bd. of Educ.*, 427 F. App'x 781, 782-83 (11th Cir. 2011)(citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)(other citation omitted).

The matter of qualified immunity, therefore, is not at issue; however, Z.H. has made a "straw man" argument concerning this defense and asserts that the case law should "evolve" to include even the most minor offenses to bodily integrity as a basis for claiming substantive due process violations. This, however, avoids any discussion of what the "clearly established" law was at the time of the alleged ride-along. It is that which determines a "clearly established right" in relation to matters of personal

privacy; and a failure to show either the violation of a constitutional right or that the right was clearly established is "fatal for plaintiff's case." *Archer*, 870 F.3d at 613.

Even in *Alexander*, this Court determined that although the defendant officers induced a confidential informant to perform oral sex on a third party under threat of subjecting her to a 40-year prison term—an act which it found to constitute rape and a violation of the Fourteenth Amendment—the officers were entitled to qualified immunity. The Court reasoned that it would not have been obvious to the average officer that the deceit used by the defendants rose to the level of a constitutional violation, given that "police trickery" was an "accepted tool" and that sting operations are indispensable to policing. 329 F.3d at 917-919.

Z.H.'s allegations about Garcia's conduct are nowhere near as egregious as those described in the *Alexander* case or in the body of case law regarding violations of bodily integrity in existence at the time of the ride-along in question. If the Court were to accept Z.H.'s invitation to expand substantive due process to include such lesser conduct, it would plainly depart from the existing case law, and consequently, not be "clearly established" law at the time alleged, thus entitling Garcia to qualified immunity. *See Jones by Jones v. Webb*, 45 F.3d 178, 184 (7th Cir. 1995)(no closely analogous case would have notified police chief that his use of force to remove a boy who was trespassing in another's home violated the boy's constitutional rights).

**D.    The District Court correctly dismissed Z.H.'s claim against Chief Doughty given her failure to plausibly allege that he was personally involved in any alleged deprivation of her constitutional rights.**

The district court properly dismissed Z.H.'s claims against Chief Doughty because she did not state a claim for relief against Officer Garcia, and she did not allege that "Chief Doughty had any personal involvement with Z.H." [App., p. 48]. Z.H. brought her claim against Doughty in his individual capacity, not in his official capacity. [Z.H. Brief, p. 23, n.8; App., p. 52, ¶ 6]. Her claim is that Chief Doughty, "in his individual capacity," "failed to train or supervise Officer Garcia."[13] [Z.H. Brief, p. 23]. She did *not* allege that Doughty had any knowledge of, or participation in, the acts Garcia allegedly committed during the ride-along, nor did she allege that Doughty approved the ride-along, or that, given the "small size" of the Hammond Police Department, he must have approved it because in a small department "ride-alongs are approved by the chief of police."[14] [Z.H. Brief, pp. 22-25; App., pp. 51-57].

In response to a motion to dismiss, a plaintiff may "elaborate on [her] factual allegations," but only if the "new elaborations are consistent with the pleadings." *Geinosky*, 675 F.3d at 745, n.1.   And the Court "need not accept as true …

---

[13] Z.H. made no argument that Doughty could be personally liable on a failure to train claim. [Z.H. Brief, pp. 22-4.]   Thus, she has waived any such claim.   *Crespo*, 824 F.3d at 673 (perfunctory and undeveloped arguments waived).

[14] Z.H. cites no authority for this proposition.   As of 2020, the Hammond Police Department had over 200 employees, hardly a "small department" by any reasonable measure and proportionate to a city of its size.   *See* https://zoominfo.com/pic/hammond-police-department/50513267.   Z.H. simply concludes—but avers no facts—to suggest that as chief of police of a department of over 200 employees, defendant Doughty approved the ride-along of one of its officers.

unsupported conclusory factual allegations." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

Z.H.'s complaint offers no *facts* from which the Court could reasonably infer that Chief Doughty personally approved the ride-along. What she actually alleged is that Doughty "permitted" the ride-along while knowing that "Garcia was being sued for sex misconduct." [App., p. 55, ¶ 33]. In her briefing to this Court and to the district court, Z.H. has clarified that by "permitted" she means "Doughty failed to issue an order prohibiting Officer Garcia from having female ride alongs." [Z.H. Brief, p. 23; DE 13, p. 4].

But "[t]here is no principle of superiors' liability, either in tort law generally or in the law of constitutional torts." *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988). "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)(emphasis in original). "Without a showing of direct responsibility for the improper action, liability will not lie against a supervisor official." *Id*. Indirect approval is insufficient. *Cygnar v. City of Chi.*, 865 F.2d 827, 847 (7th Cir. 1989). Rather, "the official must actually have participated in the constitutional wrongdoing." *Id.*

This is because "[f]ailure to take corrective action cannot in and of itself violate § 1983. Otherwise the action of an inferior officer would automatically be attributed up the line to his highest superior." *Petrovic v. City of Chi.*, 2010 WL 1325709, at *2

(N.D.Ill. Mar. 30, 2010)(quoting *Soderbeck v. Barnett County*, 752 F.2d 285, 293 (7th Cir. 1985)).  In *Petrovic*, plaintiff was handcuffed after refusing to sign a blank criminal complaint, then was kicked and struck by a Chicago police officer who called her a derogatory name.  In her complaint alleging a substantive due process violation, she alleged that the superintendent of the department and the chief administrator of the Office of Professional Standards knew that the City of Chicago maintained a widespread policy of failing to adequately train, supervise, discipline, and otherwise control the abusive officer; and that they acquiesced in, and even condoned, this policy.  *Id.* at *1.

The district court held that such conclusory allegations were insufficient to state a constitutional claim; and that "a failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official encouraged the *specific incident of misconduct* or in some way directly participated in it." *Id.* at *2 (quoting *Lenard v. Argento*, 699 F.2d 874, 885 (7th Cir. 1983))(emphasis added); *see Kuhn v. Goodlow*, 678 F.3d 552, 556-57 (7th Cir. 2012).

Consequently, a supervisor may only be held liable for the conduct of his subordinates if the supervisor was "personally involved in that conduct."  *Jones*, 856 F.2d at 992.  This means the supervisor must (1) "know about the conduct" and (2) "facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* at 992-93; *see also Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997); *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010). The supervisor "must act either knowingly or with deliberate, reckless indifference." *Jones*, 856 F.2d

at 992-93;[15] *see also Kernats v. O'Sullivan*, 35 F.3d 1171, 1182-83 (7th Cir. 1994) (affirming dismissal of claim against police chief where plaintiffs did not allege that chief "observed, directed, ignored, approved, participated in any way, or even knew about" officer's allegedly unconstitutional acts "as they were taking place").

Personal involvement is essential, because "§ 1983 liability is premised on the wrongdoer's personal responsibility." *Kuhn*, 678 F.3d at 555-56. In other words, "the officials must both be the cause-in-fact of the injury and its proximate cause." *Hoffmann v. Knoebel*, 894 F.3d 836, 841 (7th Cir. 2018)(quoting *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012)). A supervisor who is "simply negligent in failing to detect and prevent subordinate misconduct [is] not personally involved." *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997) (director, executive director, and inspector general of government department not individually liable for supervisory liability where they were not present and had no involvement in workplace search of employee's office and personal property); *see also Chavez v. Ill. State Police*, 251 F.3d 612, 652-53 (7th Cir. 2001) (no supervisory liability for master sergeant who was statewide coordinator in drug interdiction unit where evidence did not show that he "instruct[ed], or even encourage[d] or consent[ed] to, the use of race as an indicator" for traffic stops).

---

[15] In *Jones*, the plaintiff presented sufficient evidence at trial for the jury to reasonably infer the personal involvement of three supervisory officers in a false arrest/malicious prosecution action where the supervisors—who were aware of a problematic "line-up" identification and of doubts communicated by another detective about a plaintiff's guilt—"had known every false step taken by the subordinate officers, had approved every false step, and done their part to make the scheme work—by deep-sixing Laverty's report (Deas), by trying to put Laverty off the scent (Griffith), and by signing a deceitful report for use by the prosecution (Palmer)." 856 F.2d at 992-93.

Z.H. does not allege that Doughty was present for any part of the ride-along or that he even knew of it before it took place. There is no indication that he encouraged Garcia or any other male HPD officer to take female citizens of any age on ride-alongs. She asserts instead that Doughty knew Garcia had been sued for alleged sexual misconduct. [App., p. 55, ¶ 33]. Although only briefly alluded to in her complaint, Z.H.'s brief refers to the case of *Szany v. Garcia, et al*, No. 2:17-cv-74-PPS-JPK, 2020 WL 2767356 (N.D.Ind. May 28, 2020).[16] [Z.H. Brief, p. 23]. Z.H. asserts that this one, unproven legal claim imputed to Doughty "extensive knowledge" of a supposed "tendency" by Garcia to "commit sexual assaults against women." [Z.H. Brief, p. 23].

The allegations in *Szany* did nothing of the sort. Officer Szany alleged that in October of 2016, while they were in an HPD briefing room, Garcia grabbed her police vest and a struggle ensued over a flashlight he had loaned her; and that during the struggle Garcia grabbed her gun belt and later struck her on the buttocks with an open hand. Szany admitted that nothing about the struggle was overtly sexual. 2020 WL 2767356, at *1-2. When Garcia struck Szany's backside, he quickly removed his hand—he did not grope her buttocks, or allow his hand to linger, or move his hand toward her genital area. *Id.* at *15. In her deposition, Szany admitted that she had not experienced any other sexual harassment involving Garcia or anyone else within

---

[16] Under *Geinosky*, 675 F.3d at 745, n.1, Doughty asks the Court to take judicial notice of the allegations in the then-operative complaint in *Szany v. Garcia* and the order granting summary judgment to the defendants in that case because Z.H. has alluded to that lawsuit in her complaint [DE 1, ¶ 33] and because she has made the allegations in *Szany* central to her claims against Doughty. [*See Szany v. Garcia, et al*, 2:17-cv-74-PPS-JPK, DE 118, Fifth Amd. Cmplt.]

the department. *Id.* at *2. HPD investigated the incident and disciplined Garcia. *Id.* at *2-3.

Garcia's alleged actions toward Szany come nowhere near to imputing to Doughty the knowledge that Garcia would take Z.H. on a ride-along, contrary to HPD policy, let alone that Garcia would engage in the conduct Z.H. attributes to him. There are simply no alleged facts to suggest that Chief Doughty was personally involved in Z.H.'s ride-along, that he knew of any conduct allegedly violating Z.H.'s constitutional rights, and that he facilitated, approved, condoned, or turn a blind eye to it for fear of what he might see. *Jones*, 856 F.2d at 992-93. Garcia and Szany were co-workers who engaged in a tussle over a flashlight that culminated in a brief slap of Szany's buttocks—an act that did not even amount to sexual harassment under Title VII. *Szany*, 2020 WL 2767356, at *13-18. The ride-along with Z.H. occurred more than two years later. [App., p. 52, ¶ 7]. The allegations in *Szany* are simply too attenuated—and factually dissimilar—to bear any relevance to Z.H.'s claims.

Z.H.'s citation to *Romero v. City of Clanton*, 220 F.Supp.2d 1313 (M.D.Ala. 2002) is unavailing. [Z.H. Brief, p. 24]. *Romero* is a pre-*Twombly/Iqbal* case. In *Romero*, the court employed the "no set of facts" pleading standard rejected in *Twombly*—that is, that a motion to dismiss for failure to state a claim should be granted "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint." *Id.* at 1315; *see also Twombly*, 550 U.S. at 562-63 ("the phrase is best forgotten as an incomplete, negative gloss …"). Quite apart from that, *Romero* involved the actions of a police

officer who purportedly conducted an unlawful pat down of the plaintiff, exposed himself, and tried to sodomize him. *Id.* The plaintiff also alleged that the officer had been discharged from a previous police department on allegations that he had indecently exposed himself and that the police department had been aware of a complaint against the officer for detention, unlawful touching, and attempted sodomy. *Id.* at 1315, 1318.[17] The court concluded that the conduct in both incidents were sufficiently similar to raise questions about the police chief's knowledge of the officer's propensities to engage in constitutional deprivations. *Id.* at 1318.

That is not the situation here. Under the circumstances, Chief Doughty cannot be said to have facilitated, approved, or condoned constitutionally improper conduct where there was no constitutionally improper conduct in the first place—either in the matter of the ride-along or in Garcia's altercation with Szany. The district court's dismissal of Z.H.'s claims against Doughty should be affirmed because Z.H. has not alleged that he was personally involved in any deprivation of her constitutional rights.

## E.     There are no alleged facts to show that Doughty caused or participated in any violation of the Equal Protection Clause.

As discussed above, a government official is only liable for his or her own misconduct in § 1983 claims alleging constitutional violations. *Ashcroft v. Iqbal*, 556

---

[17] Z.H. also cites *Perez v. Fajardo*, 257 F.Supp.2d 467 (D.P.R. 2003) where the court also employed the "no set of facts" pleading standard. *Id.* at 470-71. The court denied a police superintendent's motion to dismiss on the supposition that the plaintiff might be able to find facts showing that he knew an officer had a pattern of sexual misconduct, not that the plaintiff had actually alleged any such facts. *Id.* at 474. Neither *Perez nor Romero* is persuasive.

U.S. 662, 677 (2009). For liability to attach, a plaintiff who sues a supervisor for an employee's alleged violation of the Equal Protection Clause "must show that the supervisor had the specific intent to discriminate" based on plaintiff's status as a member of a protected class. *See Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015). A supervisor is liable under the Equal Protection Clause for undertaking a course of action only because of, not merely in spite of, the action's adverse effects upon an identifiable group. *Id.*

Here, Z.H. has failed to identify any similarly situated group, or class, treated differently by Garcia under the same or similar circumstances. [App., pp. 46-47]. This dooms any Equal Protection claim she might have alleged against Doughty. However, even if she had adequately stated such a claim against Garcia, Z.H. has not alleged any facts showing that Doughty had a specific intent to discriminate against her because she was female. Her own complaint makes clear that Chief Doughty did not know about her complained of conduct until after it occurred, and after she reported it to a teacher and someone reported it to HPD. [App., p. 54, ¶ 31]. She does not allege that any further harassment occurred after that report. With no facts from which discriminatory intent could be inferred, Z.H. has not stated a claim against Doughty for a violation of the Equal Protection Clause.

## F. The District Court appropriately dismissed Z.H.'s complaint with prejudice.

The district court granted Garcia's and Doughty's motions to dismiss with prejudice. [App., p. 48]. This was entirely appropriate. Under the heading "Equal Protection Claim," Z.H. asserts that she should have been granted leave to amend

her complaint. [Z.H. Brief, pp. 5-6, 21-22]. She claims that amendment would not be futile because, according to her, "the court implied that had it had more information, it may have decided in the alternative." [Z.H. Brief, p. 21]. But she does not cite a page number from the district court's opinion, nor does she quote or cite to any particular language from the opinion that would identify this "implication." It is nowhere to be found.

In *Fosnight v. Jones*, 41 F.4th 916 (7th Cir. 2022), the Court affirmed the district's court decision to dismiss a plaintiff's complaint with prejudice, noting that Rule 15(a)(1) gives a plaintiff 21 days from the filing of a Rule 12(b) motion to dismiss to amend her complaint, yet Fosnight failed to do so. *Id.* at 924. Likewise, Z.H. did not timely file an amended complaint—thus, she now needs the defendants' consent or leave of court to do so. *Id.* (citing Fed. R. Civ. P. 15(a)(2)). Generally, leave to amend once is granted, but the district court is within its discretion to deny such leave where the plaintiff has not given a "meaningful indication of how [she] would plead differently." *Id.* at 925 (quoting *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012)).

In *Fosnight*, the plaintiff made only a conclusory request for leave to amend at the end of his response to the motion to dismiss; and he offered no explanation of how he could cure the defects identified in the motion. *Id.* Z.H. shares the same failing. Her briefing gives no indication of any ability on her part to plead any differently so as to cure the multiple defects in her complaint. [DE 13, pp. 10-11; DE 21, p. 11]. Instead, she merely argued that her conclusory allegation of intentional

discrimination was sufficient. [*Id.*] And neither of Z.H.'s response briefs included any request for leave to amend. [*Id.*] Thus, as in *Fosnight*, the district court was within its discretion to dismiss with prejudice. 41 F.4th at 925.

## VII. <u>CONCLUSION</u>

Z.H.'s allegations, based on substantive due process and equal protection, fail to state viable claims against Garcia and Doughty. The district court properly dismissed them with prejudice, and its ruling should be affirmed.

Respectfully submitted,

**LEVINSON & LEVINSON**

/s/ Shana D. Levinson
    Attorney for Defendant-Appellee,
    Jamie Garcia

Shana D. Levinson, #21350-45
LEVINSON & LEVINSON
384 W. 80th Place
Merrillville, IN 46410
Telephone: (219) 769-1164

**EICHHORN & EICHHORN, LLP**

/s/ John M. McCrum
    One of the Attorneys for
    Defendant-Appellee,
    Chief John Doughty

John M. McCrum, #9988-45
Ryan A. Cook, #26798-49
EICHHORN & EICHHORN, LLP
2929 Carlson Drive, Suite 100
Hammond, Indiana 46323
Telephone: (219) 931-0560

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned attorney certifies that the foregoing brief:

(i) complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) because it contains 10,421 words, excluding the cover page, table of contents, table of authorities, statement regarding oral argument, certificates of counsel, signature block, and proof of service as allowed by Fed. R. App. P. 32(f); and

(ii) complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6), as modified by Circuit Rule 32, because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO (Version 2207) in 12-point Century Schoolbook font in text and 11-point Century Schoolbook font in footnotes.

Dated: September 19, 2022

By: /s/ Ryan A. Cook
Ryan A. Cook

## <u>SUPPLEMENTAL APPENDIX</u>

| <u>Document/Docket Entry No.</u> | <u>Page No.</u> |
|---|---|
| Judgment in a Civil Action dated March 23, 2022 [DE 24] | Supp. App. 1 |
| Notice of Appeal | Supp. App. 2 |

# UNITED STATES DISTRICT COURT
for the
### Northern District of Indiana

Z.H.

      Plaintiff

             v.                            Civil Action No. 3:21-cv-101

JAMIE GARCIA, *Officer*
JOHN DOUGHTY, *Chief*

      Defendant(s)

## JUDGMENT IN A CIVIL ACTION

The court has ordered that (*check one*):

☐ the Plaintiff(s),_____recover from the Defendant(s)_____ damages in the amount of _____, plus post-judgment interest at the rate of ____ %

☐ the plaintiff recover nothing, the action is dismissed on the merits, and the defendant recover costs from the plaintiff _____

**X** Other: This case is DISMISSED WITH PREJUDICE.

This action was (*check one*):

☐ tried to a jury with Judge _____
presiding, and the jury has rendered a verdict.

☐ tried by Judge _____
without a jury and the above decision was reached.

**X** decided by  Chief Judge Jon E DeGuilio   on defendants' Motion to Dismiss.

DATE:   3/23/2022_____        GARY T. BELL, CLERK OF COURT

                                  by_____ s/N. Corle_____
                                  *Signature of Clerk or Deputy Clerk*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| Z.H. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) CASE NO: 3:21-cv-101 JD |
| | ) |
| OFFICER JAMIE GARCIA and | ) |
| CHIEF JOHN DOUGHTY, | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF APPEAL

Comes now the Plaintiff, Z.H., by counsel, Benjamen W. Murphy and appeals to the

United States Court of Appeals for the 7th Circuit from the final judgment entered on March 23,

2022 namely Dkt. 23 which is the Court's order granting Defendants' Motions to Dismiss.

Respectfully submitted,

/s/Benjamen W. Murphy
Benjamen W. Murphy, #21028-45
426 N. Broad Street
Griffith, IN 46319
P: (219) 922-0400
Email: benmur01@gmail.com
Attorney for Plaintiff

## Certificate of Service

I hereby certify that on the 4th day of April, 2022, a true and accurate copy of the
foregoing was served upon all counsel of record through the Court's CM/ECF system maintained
by the U.S. District Court for the Northern District of Indiana.

/s/Benjamen W. Murphy

## **CERTIFICATE OF SERVICE**

I, John M. McCrum, certify that on the <u>19th</u> day of September, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

     <u>/s/ John M. McCrum</u>
     John M. McCrum